BOARD OF EDUCATION OF ALBANY VILLAGE SCHOOL
DISTRICT OF ATHENS COUNTY *v.* STATE, EX REL.
BROWN ET AL.

(Decided November 7, 1930.)

*Mr. R. D. Williams,* prosecuting attorney, and
*Messrs. Woolley & Rowland,* for plaintiff in error.
*Mr. Charles D. Fogle* and *Mr. Emmett Keenan,*
for defendants in error.

MAUCK, J.   An action was brought in the name of
the state, upon the relation of Robert Brown and
Z. T. Alley, against the board of education of Al-
bany consolidated rural school district of Athens
county, alleging in an amended petition that the re-
lators were taxpaying residents of what was known
as the Golden sub-school district in Athens county,
and that this subdistrict was part of a larger district
controlled by the defendant board.   It is further al-
leged that the defendant board upon its own motion

failed and refused to employ any teacher for said subdistrict for the current school year, and by such failure practically suspended the Golden school, and that no notice of such suspension was given, as contemplated by law; that between the 1st day of May and the 1st day of August, 1930, there was filed with the defendant board a petition signed by the parents and guardians of twenty or more children between the ages of seven and fifteen years, living in the Golden district, and enrolled in the school, whose residences are nearer to the schoolhouse in the Golden district than to any other school, asking that the school be reinstated in the suspended district. The relators further pleaded that there is a suitable school building in the district, and made all the other averments necessary to make a case within the provisions of Section 7730, General Code. Issue was joined upon this amended petition by the board of education of the Albany village school district, which seems to be the correct title of the board against which the relators were attempting to move. This board denied the allegations of the amended petition, and particularly the averment that there was a suitable school building in the Golden district. A demurrer was properly sustained to other defenses in the answer. Trial was had upon the issues thus joined. A writ of mandamus was ordered by the court of common pleas, and this proceeding is brought to reverse that judgment. The case was tried in conjunction with a companion case against the same board by other relators who sought to compel for like reasons the reopening of the school at Hebbardsville in the Albany village district, and the testimony taken and preserved in the bill of excep-

tions presented to this court relates to the situation in both those subdistricts. A writ of mandamus was denied in the Hebbardsville case.

The rights of the parties are determined by Section 7730, General Code. That section provides that, upon a petition filed with the local board of education between May 1 and August 1 of any year, signed by the parents or guardians of twelve children between the ages of seven and fifteen, living in the district and enrolled in school, whose residences are nearer to the suspended school than to any other school of the district, asking that the suspended school be reopened, the board of education shall reopen such school ''provided there is a suitable school building in the territory of such suspended school as it existed prior to suspension.'' The section seeks to take the government of the schools from the board of education and vest it in the volunteer residents to the extent indicated and under the conditions prescribed.

In the unreported case of *Board of Education of Circleville* v. *State, ex rel. Moody,* this court made the following observations:

''It will be seen that an extraordinary power is conferred upon what may well be a very small minority of a particular district to override the judgment of a board of education, elected for the purpose of administering the school laws and officially charged with all of the responsible duties pertaining to that office. It seems clear that when a group that may be as small as two or three householders, charged with no particular responsibility and not acting under oath, by simply affixing their signatures to a proper petition may subvert the educational

policy, such group should fully and literally comply with all the provisions of the statute conferring the right sought to be enforced.''

The evidence in the case at bar shows that the parents of more than twelve children between the ages of seven and twelve petitioned for the restoration of this school, and the record shows that those children were enumerated children in the Golden district. Enumerated children, however, are not enrolled children, and what was said by this court in the *Moody case*, already referred to, is equally pertinent here:

''In this action it may be proper to point out that evidence was offered that all of the children concerned were among the enumerated school children of the district. An enumerated child, however, is not an enrolled child. Enumerated children include all those between the ages of five and eighteen described in Section 7794, General Code. Enrolled children embrace only those mentioned in Section 7784.''

Enumerated children include all children eligible so far as age is concerned to admission to the public schools. Enrolled children are those who have actually been in attendance at a particular school during the previous year. For the most part the two groups are identical, but an enumerated child who during the previous year has attended a private or parochial school, or who for physical or other reasons has attended no school, is not an enrolled child, and cannot be considered in applying the provisions of Section 7730.

The testimony in this case overlooked the distinction referred to, and for that reason was insuffi-

cient to sustain the award of the writ of mandamus. This conclusion, however, would only lead to delay and a retrial with attending expenses, and the situation seems to require a further examination of the requirements of the section referred to.

The statute provides that, upon the filing of the requisite petition, the board of education shall reopen the school, provided there is a suitable school building in the territory of the suspended school. No standard is fixed for determining what is or what is not suitable.

In awarding the writ of mandamus in this case, it appears that the trial court was in error in two respects. The first was in assuming that the determination of the question whether or not the particular school building was suitable was primarily a judicial question. The second mistake was in applying an erroneous standard in determining what a suitable building is. Upon the first question it will be observed that the board of education is to reopen the school provided there is a suitable school building. Certainly the primary duty in determining the suitability of the building rested upon the board of education. That is the body charged by law with the duty of building, repairing, and furnishing schoolhouses. Section 7620, General Code. It is of necessity the board that must in the first instance determine the suitability of an existing building. The power of the court to compel the performance of an act by a board is limited to those acts which the law especially enjoins on the board. Section 12283, General Code. The writ only issues when it is clearly shown that the board complained of has been guilty of a plain dereliction of duty. *State, ex*

*rel. Van Harlingen,* v. *Board of Education of Mad River Twp. Rural School Dist.,* 104 Ohio St., 360, 136 N. E., 196. The real question before the trial court was whether the defendant board of education had abused its discretion in its determination that the school building in question was not a suitable one.

In the second place, the court, in reaching the conclusion that the building in question was a suitable one, took as a standard of suitability the worst schoolhouse that the county had and concluded that, as a particular school building was used in the preceding year, it was necessarily, to use the court's expression, "usable now because it was usable then." This was tantamount to holding that the statute in question compelled the reopening of the suspended school in case there was any school building in the territory that had been used the previous year, or was as nearly fit for use as the worst building in that or any other district in the county. The court, however, did not adhere to this standard. The testimony tended to show that the Hebbardsville building and the Golden building were equally suitable or equally unsuitable. The judge visited the Hebbardsville building and ascertained from the use of his own senses that the Hebbardsville building was not suitable, a fact that could scarcely have been determined that way from the testimony alone, if the test employed in this case was followed. This is pointed out because it illustrates the fact that the suitability of the building is in the first instance not a judicial question. It involves many factors and many comparisons. The board charged with the responsibility of determining the suitability of the

building is much more competent than is the court to pass upon that question.

It may be suggested that to require the relators to show that the board of education has abused its discretion in determining the building to be unsuitable is to emasculate Section 7730 and deprive those who want to retain the old school from any remedy in any case. That is not true. If the school building proposed to be abandoned has been built pursuant to the provisions of the Building Code, as modern school buildings are, it would be a clear abuse of discretion for the board of education to say it was not a suitable building. Further, if the building to which the pupils were to be transported was no better than the building sought to be abandoned, it would be an abuse of discretion for the board of education to say that the abandoned building was not suitable, inasmuch as their use of the other building would be evidence that they deemed it suitable. Other circumstances might be present that would show that the board of education was arbitrarily abandoning a school building, and in so doing exercising no discretion at all, thus enabling remonstrants to compel the reopening of the old building. In the absence of some showing, the judgment of the local board, involving as it does questions of lighting, heating, ventilation, sanitation, and other factors that enter into the determination of the suitability of a building for a particular purpose, will not be interfered with by a court. It was held in *Brannon* v. *Board of Education of Tiro Consolidated School Dist. of Crawford County,* 99 Ohio St., 369, 124 N. E., 235:

"A court has no authority to control the discretion

vested in a board of education by the statutes of this state, or to substitute its judgment for the judgment of such board, upon any question it is authorized by law to determine. * * *

"A court will not restrain a board of education from carrying into effect its determination of any question within its discretion, except for an abuse of discretion, or for fraud or collusion on the part of such board in the exercise of its statutory authority."

The quotation is taken from a case in which an attempt was made to control the action of a board of education by injunction, but it is cited with approval in a mandamus case, and is equally pertinent where that extraordinary writ is sought.

The judgment in this case is reversed, first, because the court was incompetent to grant any relief upon a showing that there were twelve or more enumerated children in the affected territory, when the requirement of the statute was that there be that number of enrolled pupils, and for the further reason that it was not shown, nor attempted to be shown, that the board of education abused its discretion in the abandonment of the building in the Golden district. The judgment is reversed and the case remanded for further proceedings according to law.

*Judgment reversed and cause remanded.*

MIDDLETON, P. J., and BLOSSER, J., concur.