**Paula J. AIRHART, Appellant,**

v.

**IOWA DEPARTMENT OF SOCIAL SERVICES, Appellee.**

**Nos. 2–59606, 3–59735.**

Supreme Court of Iowa.

Dec. 15, 1976.

James M. Sullivan, Des Moines, for appellant.

Richard C. Turner, Atty. Gen., and Stephen C. Robinson, Special Asst. Atty. Gen., for appellee.

Heard by MOORE, C. J., and MASON, LeGRAND, REES and UHLENHOPP, JJ.

UHLENHOPP, Justice.

These appeals involve the applicability of the Iowa Administrative Procedure Act (IAPA) to proceedings for revocation of a parole from the Iowa Training School for Girls. The appeals do not involve § 232.36 of the Code. We today decided a similar case, involving an adult parolee. *Frazee v. Iowa Board of Parole*, 248 N.W.2d 80 (Iowa).

Paula J. Airhart, born August 30, 1959, was an inmate of the Iowa Training School for Girls. The State Director of the Division of Child and Family Services of the Iowa Department of Social Services awarded Paula a parole under chapter 242, Code 1975. Section 242.12 of that chapter provides:

> The state director may at any time after one year's service order the discharge or parole of any inmate as a reward for good conduct, and may, in exceptional cases, discharge or parole inmates without regard to the length of their service or conduct, when satisfied that the reasons therefor are urgent and sufficient. If paroled upon satisfactory evidence of reformation, the order may remain in effect or terminate under such rules as the state director may prescribe.

While Paula was on parole, a case worker reported that Paula violated terms of her parole, and the Department of Social Services instituted proceedings under rules set out in its Employees Manual to revoke the parole. Those rules had been adopted by the Department on April 6, 1976, subsequent to the effective date of IAPA, but not in the manner prescribed in § 17A.4 of that Act.

Paula petitioned the district court for judicial review of the pending revocation proceedings on the grounds inter alia that (1) the Department's rules were of no effect because not adopted in the manner prescribed by § 17A.4 and (2) the rules did not provide for the procedures in a revocation proceeding which are prescribed for con-

tested cases by §§ 17A.11 to 17A.16 of IAPA. The Department moved to dismiss Paula's petition, and the trial court held against Paula on both of her contentions and sustained the Department's motion.

The Department then went forward with the revocation proceeding under its rules, with Paula objecting on the same two grounds and others. The Department revoked the parole, and Paula again petitioned the district court for review. The Department again moved to dismiss, and the trial court again sustained the Department's motion. Hence we have the present two consolidated appeals by Paula from the orders sustaining the two motions.

The parties call upon us to interpret IAPA with reference to proceedings to revoke paroles of parolees from the training schools. Paula presents the two contentions we have stated which she tendered in district court.

I. *Parole Revocation Rules.* Does IAPA govern the method for adopting parole revocation rules authorized by § 242.12?

To begin with, § 17A.1(2) of IAPA provides in pertinent part:

> This chapter is intended to provide a minimum procedural code for the operation of all state agencies when they take action affecting the rights and duties of the public. . . . This chapter is meant to apply to all rule-making and contested case proceedings and all suits for the judicial review of agency action that are not specifically excluded from this chapter or some portion thereof by its express terms or by the express terms of another chapter.

In addition, the pertinent portion of § 17A.23 provides:

> Except as expressly provided otherwise by this Chapter or by another statute referring to this Chapter by name, the rights created and the requirements imposed by this Chapter shall be in addition to those created or imposed by every other statute now in existence or hereafter enacted. If any other statute now in existence or hereafter enacted diminishes

any right conferred upon a person by this Chapter or diminishes any requirement imposed upon an agency by this Chapter, this Chapter shall take precedence unless the other statute expressly provides that it shall take precedence over all or some specified portion of this named Chapter.

The Iowa administrative procedure act shall be construed broadly to effectuate its purposes. This Chapter shall also be construed to apply to all agencies not expressly exempted by this Chapter or by another statute specifically referring to this Chapter by name . . . .

The Department clearly comes within the definition of "agency" in § 17A.2(1). Furthermore, its parole revocation rules come within the general definition of "rules" in § 17A.2(7):

"*Rule*" means each agency statement of general applicability that implements, interprets, or prescribes law or policy, or that describes the organization, procedure, or practice requirements of an agency. . . .

The Department's rules in question were not adopted in complete or in substantial compliance with the method prescribed in § 17A.4, and Paula challenged them within two years of their adoption. Section 17A.4(3) provides:

No rule adopted after July 1, 1975 is valid unless adopted in substantial compliance with the above requirements of this section. However, a rule shall be conclusively presumed to have been made in compliance with all of the above procedural requirements of this section if it has not been invalidated on the grounds of noncompliance in a proceeding commenced within two years after its effective date.

■ From the statutes we have cited and quoted, IAPA plainly governs the Department's method of adopting parole revocation rules unless some exclusion applies. The Department does not cite any statute outside of IAPA which excepts its rule-making methods from that Act, but it points to § 17A.2(7)(k) which is one of the exclusions to the general definition of rules

we have quoted. This exclusion provides that a "rule" does not include:

(k) A statement concerning only inmates of a penal institution, students enrolled in an educational institution, or patients admitted to a hospital, when issued by such an agency.

The Department urges that while Paula was on parole, she was an inmate of a penal institution or a student enrolled in an educational institution. In support of its contention the Department points to the language of § 17A.1(2) to the effect that IAPA provides procedures for the operation of agencies when they take action affecting the "public," and it argues a parolee is not a member of the public.

■ Assuming arguendo that the training school is a penal institution, was Paula an inmate of the training school when she was out on parole? "Inmate" is defined as "a person or persons confined or kept in an institution (as an asylum, prison, or poorhouse)." Webster's Third New International Dictionary (1969). While on parole Paula did not come within this definition. Assuming arguendo that the training school is an educational institution, was Paula a student enrolled in the training school while on parole? The words, "A statement concerning *only* . . . students enrolled in an educational institution . . . when issued *by such agency* [italics added]," carry to our minds the idea of students attending the educational institution. Cf. *Board of Education of Albany Village School Dist. v. State*, 37 Ohio App. 453, 175 N.E. 217. This view is buttressed by illustrations by one of the individuals involved in securing enactment of the Act. Bonfield, Iowa Administrative Procedure Act, 60 Iowa L.Rev. 731, 843–844 ("So, for example, statements prescribing visiting hours at the prison would not be exempt under paragraph (k), but statements prescribing the mealtimes and daily routine of inmates are exempt. Similarly, statements about admission policies at the state universities or state hospitals are not exempt since they are directed at nonstudents and nonpatients. But statements prescribing the academic routine of stu-

dents admitted to the state universities or the routine and treatment of patients admitted to the state hospitals are exempt."). Professor Bonfield justifies the exclusion on the grounds that the named institutions have a particular responsibility for persons in their care and that the details of countless daily relationships with such persons would render public rule-making procedures intolerable.

We think Paula was more a member of the public than an inmate or enrolled student of an institution while she was out on parole, and we conclude that exclusion (k) is inapplicable. Hence on Paula's first contention in the appeal, we hold that § 242.12 constitutes the Department's substantive *authority* to promulgate parole revocation rules and that § 17A.4 prescribes the *method* by which the Department promulgates the rules. The trial court erred on Paula's first contention.

II. *Contested Case Proceedings.* Paula's other contention is that, in any event, the Department must adhere to IAPA procedures as a minimum in conducting parole revocation proceedings. Section 17A.11 to 17A.16 contain those procedures. We have previously quoted part of § 17A.1(2) which includes the provision that IAPA is meant to apply to all "contested case proceedings" not specifically excluded by express terms of the Act or of another chapter of the Code. The parties do not cite a specific exclusion from IAPA of parole revocation proceedings by an express exclusion in either the Act itself or in another chapter. Hence the issue is whether juvenile parole revocation proceedings are "contested case proceedings" under IAPA.

Section 17A.2(2) provides:

"*Contested case*" means a proceeding including but not restricted to ratemaking, price fixing, and licensing in which the legal rights, duties or privileges of a party are required by Constitution or statute to be determined by an agency after an opportunity for an evidentiary hearing.

■ The only question which arises under this definition is whether the Constitu-

tion or a statute requires an opportunity for an evidentiary hearing in a juvenile parole revocation proceeding. Were this an adult parole revocation proceeding, no question would exist; opportunity for an evidentiary hearing is mandatory. *Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484. In view of the manifest concern of the United States Supreme Court for the interests of youth, we have no doubt that juveniles possess a similar constitutional right. Cf. *Kent v. United States,* 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84; *In re Gault,* 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527; *In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368; *Goss v. Lopez,* 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725.

■ We thus hold that the provisions of IAPA governing procedure in contested case proceedings apply as a minimum to contested juvenile parole revocations, and that the trial court erred on Paula's second contention.

We conclude that the trial court should have overruled the Department's motions to dismiss.

The Department strenuously argues that IAPA procedure is too elaborate for practical application to parole revocations. This is a policy matter and not for us to consider. If change is needed, the Department's course is to seek legislative action within constitutional limits.

REVERSED.