**SALSBURY LABORATORIES, an Iowa Corporation, Appellant,**

v.

**IOWA DEPARTMENT OF ENVIRONMENTAL QUALITY, Appellee.**

**No. 61605.**

Supreme Court of Iowa.

March 21, 1979.

Rehearing Denied April 19, 1979.

Gary S. Gill, Robert A. Hutchison, and William D. Bartine II of Swift, Brown, Winick & Graves, Des Moines, for appellant.

Richard C. Turner, Atty. Gen., Clifford E. Peterson, James C. Davis, and Timothy D. Benton, Asst. Attys. Gen., for appellee.

Considered by REYNOLDSON, C. J., and LeGRAND, UHLENHOPP, HARRIS and ALLBEE, JJ.

REYNOLDSON, Chief Justice.

District court sustained a motion to dismiss Salsbury Laboratories' action for certiorari, declaratory and injunctive relief from an order promulgated by the Iowa Department of Environmental Quality (DEQ). Salsbury appeals and we affirm.

December 13, 1977, Salsbury filed a petition for declaratory and injunctive relief from an anticipated executive order of DEQ. Salsbury alleged the order "to be issued on Wednesday, December 14, 1977, will prohibit the business operations of . . . [Salsbury's] plant located in Charles City." District court issued an ex parte temporary injunction prohibiting issuance of any order concerning Salsbury. Hearing was set for December 21.

December 14 DEQ petitioned this court for a writ of certiorari to district court and applied for a stay of the temporary injunction. DEQ asserted the order had been issued on December 14 and sent to Salsbury before notice of the temporary injunction was served. December 15 a three-justice panel stayed the ex parte injunction, denied the certiorari petition and indicated the court would be willing to consider the issues raised by DEQ after the December 21 hearing. Salsbury received formal notice of Executive Order 77–DQ–01 on December 16.

Executive Order 77–DQ–01, in general terms, prohibited Salsbury from depositing waste materials at its existing disposal site near its Charles City plant and required Salsbury to submit within thirty days a commitment to remove all waste materials from the site and a plan for doing so. The timetable for the enumerated tasks to be performed by Salsbury, including creation of a new disposal site and construction of waste water treatment facilities, extended into 1980.

Before the December 21 temporary injunction hearing commenced, DEQ filed a motion to dismiss. Salsbury resisted this motion and filed a three-count amendment to its petition, praying for declaratory, certiorari and injunctive relief. The new counts alleged the order had been issued and served.

January 12, 1978, E. Robert Baumann, professor of engineering at Iowa State University, requested through his own counsel a ruling on his duty to testify pursuant to subpoena issued at Salsbury's request. Baumann, on annual retainer as a consultant to Salsbury since 1967, feared prosecution for testifying against the State's interest. §§ 68B.6, .8, The Code 1977.

District court declined to lay down any guidelines for Baumann other than that the subpoena "requires witnesses to testify unless constitutional, statutory, or other grounds may exist with respect to the qualification of a witness for his testimony to be received in evidence."

On January 19, without concluding the temporary injunction hearing, district court sustained DEQ's dismissal motion and ordered Salsbury's action dismissed. Salsbury timely appealed and presents two issues for review: (1) Should Salsbury's action have been dismissed for failure to exhaust administrative remedies when it alleged DEQ's enabling statute was facially unconstitutional, and (2) did trial court err in not ruling Baumann could testify without fear of prosecution?

I. This appeal requires us to explore, as a matter of first impression, certain aspects of judicial review of agency action under the provisions of chapter 17A, The Code.

In *Richards v. Iowa State Commerce Commission*, 270 N.W.2d 616 (Iowa 1978), we said provisions in section 17A.19 "constitute the exclusive means of judicial review of agency action." 270 N.W.2d at 619. We also held:

> [A] party seeking judicial review of intermediate agency action under § 17A.19(1) must show . . . (1) adequate administrative remedies have been exhausted *and* (2) review of the final agency action would not provide an adequate remedy.

*Id.* at 619–20 (emphasis in original).

The parties agree DEQ's order constitutes agency action as defined in section 17A.2(9). *See Kerr v. Iowa Public Service Co.*, 274 N.W.2d 283, 286 & n.1 (Iowa 1979); *Richards*, 270 N.W.2d at 619. However, once the order was issued Salsbury did not petition for judicial review pursuant to section 17A.19. It now contends certiorari, declaratory judgment and injunction actions are exceptions to our "exclusive means" pronouncement. Nor did Salsbury exhaust administrative remedies before commencing this litigation. It contends such failure is excused when the agency's enabling statute is attacked as facially unconstitutional.

We consider these issues under the principles invoked by DEQ's dismissal motion. A motion to dismiss waives any ambiguity or uncertainty in the petition. For purposes of testing the petition's sufficiency, it is construed in the light most favorable to the pleader and its allegations are accepted as true. The motion cannot aid itself with factual allegations not part of the petition. Nor can movant rely on facts supplied by an evidentiary hearing. *See Berger v. General United Group, Inc.*, 268 N.W.2d 630, 634 (Iowa 1978); *Weber v. Madison*, 251 N.W.2d 523, 525 (Iowa 1977).

Over 200 pages of the 346-page appendix are devoted to testimony and evidence adduced at the December 21 hearing, which was expressly restricted to the temporary injunction issue. Our review, except for matters we may judicially note, is limited to Salsbury's amended petition.

A. *Exclusivity of section 17A.19.* *Richards* was not the first time we specifically held section 17A.19 to contain, just as it says it does, the exclusive means of judicial review of agency action. *See, e. g., Iowa Department of Revenue v. Iowa State Board of Tax Review*, 267 N.W.2d 675, 677 (Iowa 1978); *City of Davenport v. PERB*, 264 N.W.2d 307, 311 (Iowa 1978).

In *Warren County v. Judges of the Fifth Judicial District*, 243 N.W.2d 894 (Iowa 1976), we made a clear distinction between judicial officers and administrative officers for purposes of reviewing their actions. Actions of the former "may be reviewed in a number of ways, including . . . certiorari." As to administrative officers, however, "[a] general right of review exists . . . under the administrative procedure act." 243 N.W.2d at 900. In *Wright v. State Board of Engineering Examiners*, 250 N.W.2d 412 (Iowa 1977), the court found it necessary to note the case was pre-Iowa Administrative Procedure Act after holding alleged illegality in the board's adjudication of a practitioner's misconduct "must be tested against principles governing ordinary certiorari proceedings." 250 N.W.2d at 416.

In *Curtis v. Board of Supervisors*, 270 N.W.2d 447 (Iowa 1978), county residents used certiorari to challenge board's selection of location for freeway overpass. We affirmed an order dismissing the certiorari action because the power to locate the overpass lay with the department of transportation, whose decision was subject to judicial review under section 17A.19. 270 N.W.2d at 450.

More recently in *Kerr v. Iowa Public Service Co.*, 274 N.W.2d at 286, plaintiffs unsuccessfully objected to the utility's petition for a franchise with eminent domain rights. Instead of seeking judicial review of the commerce commission's decision to grant the franchise, plaintiffs waited several months and then sought an injunction just before the condemnation proceedings started. We held that because the contentions presented by the injunction action were resolved by the commission, plaintiffs were actually seeking review of agency action. Under those circumstances,

the exclusivity of the IAPA judicial review provisions cannot be disregarded. Judicial review of the administrative proceedings is a right conferred by statute. . . . [W]here a right of judicial review is statutory, the procedure prescribed by the statute must be followed.

274 N.W.2d at 287 (citations omitted). We also held a statute, passed more recently than chapter 17A, which purportedly authorized injunctive relief was "ineffective to override the IAPA" without express provision to that effect in the newer statute. *Id.* at 287–88.

In numerous other cases the parties and this court have routinely applied section 17A.19. *See, e. g., Cedar Valley Leasing, Inc. v. Iowa Department of Revenue*, 274 N.W.2d 357 (Iowa 1979); *Second Injury Fund v. Mich. Coal Co.*, 274 N.W.2d 300 (Iowa 1979); *Miller v. Iowa Real Estate Commission*, 274 N.W.2d 288 (Iowa 1979); *Churchill Truck Lines, Inc. v. Transportation Regulation Board*, 274 N.W.2d 295 (Iowa 1979). In the two decisions which appear to fall outside the pattern the agency did not raise the failure to proceed pur-suant to section 17A.19 or otherwise question the form of action pursued. *Hawkins v. Preisser*, 264 N.W.2d 726 (Iowa 1978); *Board of Supervisors v. Department of Revenue*, 263 N.W.2d 227 (Iowa 1978).

In none of these cases, however, have we specifically held that section 17A.19 precludes judicial review by common-law writs such as certiorari, declaratory judgment, and injunction. Salsbury relies on Iowa R.Civ.P. 308 and 261, which provide that the existence of other remedies does not preclude relief through certiorari and declaratory judgment respectively. Of course, if the legislature intended section 17A.19 to be truly exclusive, relief through such common-law writs is precluded. *See Herbst v. Treinen*, 249 Iowa 695, 701, 88 N.W.2d 820, 824 (Iowa 1958).

Salsbury also relies on the sentence immediately following the "exclusive means" language in section 17A.19:

However, nothing in this chapter shall abridge or deny to any person or party who is aggrieved or adversely affected by any agency action the right to seek relief from such action in the courts.

We are cognizant of the well-settled rule of statutory construction that courts should not render any portion of a law superfluous. *Millsap v. Cedar Rapids Civil Service Commission*, 249 N.W.2d 679, 688 (Iowa 1977). We are convinced, however, the quoted sentence is not as far-reaching as Salsbury's position requires it to be construed.

First, a fair reading of the section 17A.19 language reveals the legislature only wanted chapter 17A construed so as not to place barriers between agency litigants and the courts. The sentences do not provide that common-law writs such as certiorari may be used to review agency action. Legislative history shows the omission was intentional. Chapter 17A was patterned after the Model State Administrative Procedure Act. *See* Bonfield, *Iowa Administrative Procedure Act*, 60 Iowa L.Rev. 731, 747–54 (1975). The Model Act's judicial review section provides:

(a) A person who has exhausted all administrative remedies available within

the agency and who is aggrieved by a final decision in a contested case is entitled to judicial review under this Act. This Section does not limit utilization of or the scope of judicial review available under other means of review, redress, relief, or trial *de novo* provided by law. Model State Administrative Procedure Act § 15 (rev. 1961), *reprinted in* 13 Uniform Laws Annotated at 402 (1979 Supp.).

The Iowa legislature significantly departed from the Model Act on this provision. The bill as introduced in the Iowa House contained only the "exclusive means" sentence upon which so much reliance has been placed by this court and most parties. 1974 Session, 65th G.A., H.F. 1200. Just prior to passage by the House the sentence relied upon by Salsbury was added to H.F. 1200. 1974 H.J. 1053. The Senate passed H.F. 1200 with a few unrelated changes. No attempt to add the Model Act's language was ever made in either house. Had the legislature intended to permit review by means other than those provided in section 17A.19, it could have used Model Act language or its equivalent. Its declination must be given effect. It is ignored under Salsbury's interpretation of the sentence.

Second, the expansive interpretation urged by Salsbury is a step backward from the general purpose of chapter 17A: creation of a *uniform*, minimum procedural code for all state agencies. *See* § 17A.1(2). Before 1975 judicial review of agency action in Iowa was a hodgepodge of specific judicial review provisions in the enabling acts of various agencies, and common-law writs. Some agency enabling acts provided for appeal to district court. Others authorized review by common-law writ. Many contained repetitive and conflicting provisions for judicial review. For others which contained no provision at all, resort to common-law writs, such as certiorari, routinely was given approval. *See generally* Beżanson, *Judicial Review of Administrative Action in Iowa*, 21 Drake L.Rev. 1 (1971). It should be no surprise that one of the express purposes of chapter 17A is "to simplify the process of judicial review." § 17A.1(2).

The IAPA provided one form of judicial review and made it an appellate process. *See Iowa Public Service Co. v. Iowa State Commerce Commission*, 263 N.W.2d 766, 768 (Iowa 1978). Certiorari, declaratory judgment, injunction, and other common-law writs are original actions with varying standards of inquiry and review. Little simplification would be achieved if the provisions of section 17A.19 could be discarded at will in favor of certiorari, declaratory judgment, or injunction.

■ There is no basis on which to conclude the "exclusive means" language in section 17A.19 is mitigated by an exception for common-law writs such as certiorari, declaratory judgment, or injunction. A person or party aggrieved or adversely affected by agency action must utilize the provisions of section 17A.19 in seeking judicial review of that action.

Rather than conclude Salsbury can have no relief because it has not pled the only cause of action available, we look beyond the labels of Salsbury's petition. *Accord, Rick v. Boegel*, 205 N.W.2d 713, 715 (Iowa 1973) (construe pleading to effectuate justice.) It was timely filed within the time restraints of section 17A.19. *See Kerr*, 274 N.W.2d at 287–88. Considered as a petition for judicial review, does Salsbury's pleading allege facts which entitle it to relief?

B. *Exhaustion of administrative remedies.* DEQ alleged and district court concluded that Salsbury failed to exhaust administrative remedies before seeking judicial review. Salsbury contends it may bypass administrative remedies because it attacks DEQ's enabling statute as facially unconstitutional.

■ When we limit our scrutiny to Salsbury's petition, the record reveals neither the code section under which the order was promulgated nor the administrative remedies that were bypassed. We can supply this void by judicially noting the order, which is a public document duly issued by a state agency. *See First National Bank v. Bair*, 252 N.W.2d 723, 728 (Iowa 1977); *State v. Berch*, 222 N.W.2d 741, 744–45

(Iowa 1974); *McCormick's Handbook of the Law of Evidence* § 335, at 776–77 (2d ed. E. Cleary 1972). Judicial notice can be used to supplement Salsbury's petition. *Berger*, 268 N.W.2d at 634.

The order expressly was issued pursuant to section 455B.34(1) and .82(2), The Code, and section 8 of chapter 125, 1977 Session, 67th G.A. In each instance an administrative remedy—a contested case proceeding or its equivalent—is interposed between an executive order and judicial review. *See also* § 455B.83. Salsbury concedes it made no effort to trigger contested case proceedings.

On the other hand, DEQ concedes Salsbury's petition contains allegations of facial invalidity. Salsbury alleges the enabling statutes, because they fail to provide notice and hearing prior to issuance of an executive order which can deprive Salsbury of property interests, are violative of due process and are an unconstitutional delegation of legislative power. U.S.Const. amend. XIV; Iowa Const. art. I, § 9, art. III, § 1.

Salsbury refers to this situation as "a time-honored exception to the exhaustion doctrine." We approved this "emerging rule" in *Matters v. City of Ames*, 219 N.W.2d 718, 719–20 (Iowa 1974), a pre-IAPA case. Division IA of this opinion holds judicial review of agency action has been codified in Iowa. If there is such an exception today, it must be found in section 17A.19.

Section 17A.19(1) provides the only authority for reviewing agency action which is not final:

> A preliminary, procedural or intermediate agency action is immediately reviewable if all adequate administrative remedies have been exhausted and review of the final agency action would not provide an adequate remedy.

This test was set out in *Richards*, from which we quoted earlier. Salsbury's petition must demonstrate the contested case proceeding is not an adequate remedy. Salsbury must also show delaying judicial review until after the agency proceeding is inadequate.

█ 1. We are satisfied that where an attack is made on the validity of an agency's enabling statute, an administrative remedy ordinarily is inadequate for purposes of section 17A.19(1) and the first prong of *Richards*.

█ The doctrine of exhaustion of administrative remedies has never been thought to be absolute. *Accord, Matters*, 219 N.W.2d at 719 ("Exhaustion is not required before every court challenge."). *See also* 3 K. Davis, *Administrative Law* § 20.01 (1958); 5 B. Mezines, J. Stein & J. Gruff, *Administrative Law* § 49.02 (1978); B. Schwartz, *Administrative Law* § 173, at 499 (1976). If the agency is incapable of granting the relief sought during the subsequent administrative proceedings, a fruitless pursuit of these remedies is not required. *Matters*, 219 N.W.2d at 719; 3 K. Davis, *supra*, at § 20.07; 5 B. Mezines et al., *supra*, at § 49.02[1]; B. Schwartz, *supra*, at 499–500.

█ Agencies cannot decide issues of statutory validity. *Califano v. Sanders*, 430 U.S. 99, 109, 97 S.Ct. 980, 986, 51 L.Ed.2d 192, 201 (1977); *Public Utilities Commission v. United States*, 355 U.S. 534, 539, 78 S.Ct. 446, 450, 2 L.Ed.2d 470, 475 (1958); *Matters*, 219 N.W.2d at 719; 3 K. Davis, *supra*, at 74; B. Schwartz, *supra*, at § 178. If the constitutional issue does not need to be examined in a particular factual context, the administrative remedy is "inadequate" for purposes of section 17A.19(1).

Thus in *W.E.B. DuBois Clubs of America v. Clark*, 389 U.S. 309, 88 S.Ct. 450, 19 L.Ed.2d 546 (1967), the United States Supreme Court declined to decide "important and difficult constitutional issues . . . devoid of factual context" when it was undetermined whether the law was applicable to those seeking early judicial review. 389 U.S. at 312, 88 S.Ct. at 452, 19 L.Ed.2d at 549. In *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), exhaustion was not required where the constitu-

tional issue, the right to notice and hearing in advance of termination of social security benefits, was "entirely collateral to [Eldridge's] substantive claim of entitlement." 424 U.S. at 330, 96 S.Ct. at 900, 47 L.Ed.2d at 31.

Salsbury alleges these statutes, which allegedly permit the issuance of executive orders without prior notice or hearing, are unconstitutional. Courts can decide that issue without the benefit of factual adjudications entrusted to DEQ. As in *Mathews v. Eldridge*, this issue is collateral to the factual issues surrounding the merits of DEQ's order. Salsbury's allegations, taken as true, present a situation in which the contested case proceeding is not an adequate administrative remedy.

 2. Under section 17A.19(1), however, an inadequate administrative remedy still must be exhausted if judicial review from the final agency action is adequate. This test is not so easily met. Unless it is the only issue raised, the facial constitutional challenge, even though collateral, may be mooted by a favorable agency adjudication of fact or law. *See Aircraft & Diesel Equipment Corp. v. Hirsch*, 331 U.S. 752, 772, 67 S.Ct. 1493, 1503, 91 L.Ed.2d 1796, 1808 (1947). Avoidance of constitutional issues except when necessary for proper disposition of controversy is a bulwark of American jurisprudence. *See, e. g., Motor Club of Iowa v. Department of Transportation*, 251 N.W.2d 510, 519 (Iowa 1977).

 The cases recognize, however, that a litigant who would suffer irreparable harm from administrative litigation delay may proceed to court without exhausting administrative remedies. In *Mathews v. Eldridge* the Court noted:

> Eldridge has raised at least a colorable claim that because of his physical condition and dependency upon the disability benefits, an erroneous termination would damage him in a way not recompensable through retroactive payments. Thus . . . denying Eldridge's substantive claim "for other reasons" or upholding it "under other provisions" at the post-ter-

mination stage . . . would not answer his constitutional challenge.

424 U.S. at 331–32, 96 S.Ct. at 901, 47 L.Ed.2d at 31, *quoting Weinberger v. Salfi*, 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975). *See* 5 B. Mezines et al., *supra*, at § 49.02[2]. In light of these authorities we conclude an adequate showing of irreparable injury resulting from following the administrative process would make judicial review of final agency action an inadequate remedy for purposes of section 17A.19(1).

But Salsbury makes no allegations which, taken as true, amount to a showing of irreparable harm. The allegation that the order "has resulted in the cessation of certain chemical manufacturing operations" at the Charles City facility does not explain why or how this amounts to irreparable injury. The conclusory allegation that enforcement of the order "would cause immediate and irreparable harm" is likewise insufficient. *Meyers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 51, 58 S.Ct. 459, 464, 82 L.Ed. 638, 644–45 (1938) ("Obviously, the rule requiring exhaustion of the administrative remedy cannot be circumvented by asserting . . . that the mere holding of the prescribed administrative hearing would result in irreparable damage.").

Salsbury has a burden to demonstrate why it should be permitted to enter. court prematurely. On a motion to dismiss, the showing will be accepted as true, but it must be made.

The courts have required an irreparable injury of substantial dimension. As one commentator summarized the cases:

> Under most circumstances, monetary losses caused by litigation expenses or deprivation of earnings are insufficient to be considered irreparable injury. Loss of or damage to reputation is not ordinarily severe enough to be considered irreparable.

5 B. Mezines et al., *supra*, at 49–23. *See Richards*, 270 N.W.2d at 624, *quoting Thomas v. Ramberg*, 240 Minn. 1, 5, 60 N.W.2d

18, 20–21 (1953). Obviously, there is a difference between an asserted invalid who loses a significant or sole source of support, as in *Mathews v. Eldridge,* and an industrial enterprise which ceases an unspecified portion of its production. Salsbury has not met its irreparable injury burden. Trial court properly concluded judicial review was premature.

II. Finally, we turn briefly to Professor Baumann's request for ruling on his prospective testimony and Salsbury's presentation of that issue on its appeal.

Assuming this collateral issue can be piggybacked into an appeal from a pretrial dismissal order, our affirmance renders resolution of this issue unnecessary. The subpoena is of no efficacy at this juncture. Analysis of the Baumann issue would be dicta.

We affirm the judgment of district court.

AFFIRMED.