**Frederick ESTABROOK, Appellant,**

v.

**IOWA CIVIL RIGHTS COMMISSION, Appellee.**

**No. 62629.**

Supreme Court of Iowa.

Sept. 19, 1979.

Rehearing Denied Nov. 8, 1979.

James R. Potter of Chicago Legal Assistance Foundation, Chicago, Ill., for appellant.

Thomas J. Miller, Atty. Gen., and Raymond D. Perry, Asst. Atty. Gen., for appellee.

REYNOLDSON, Chief Justice.

The basic question in this appeal is whether the appellant employee Estabrook was entitled to a chapter 17A contested case evidentiary hearing in the "probable cause" phase of his age-discrimination complaint before the Iowa Civil Rights Commission under the provisions of chapter 601A, The Code 1977.

December 16, 1976, Estabrook filed a complaint with the commission, claiming his employer, Goodyear Tire & Rubber Co., discriminated against him on the basis of age when it changed his work assignment and reduced his wages. Following a commission determination of no probable cause, Estabrook petitioned district court for judicial review and secured a remand order directing the commission to receive additional evidence and issue a new decision. The commission and staff person assigned to the complaint investigated further and considered affidavits and written materials but did not provide a full-blown section 17A.12 notice and evidentiary hearing.

April 18, 1978, the commission notified Estabrook it still found no probable cause to take action on his complaint.

Estabrook again sought judicial review, contending (1) the commission failed to hold an evidentiary hearing in a contested case proceeding as required by statute, (2) he had a constitutional right to an evidentiary hearing prior to dismissal of his complaint, and (3) the finding of no probable cause was not supported by the weight of substantial evidence.

District court concluded the commission's finding was reviewable as final agency action, but not as a contested case. It therefore utilized the section 17A.19(8)(g) standard ("Unreasonable, arbitrary or capri-

cious or characterized by an abuse of discretion or a clearly unwarranted exercise of discretion.") and found that it had not been violated. It affirmed the commission's finding. We affirm district court's decision, but on a different basis.

Appealing here, Estabrook asserts the commission's probable cause function is a contested case proceeding under the Iowa Administrative Procedure Act and that the commission's finding of "no probable cause" was not supported by substantial evidence.

Because the procedural issue necessarily involves resolution of constitutional questions, ordinarily we would first examine the substantive merits of Estabrook's dispute with the commission's decision. But his only district court challenge to the merits of that decision was that it was not supported by substantial evidence. Section 17A.19(8)(f) expressly limits this review standard to contested case proceedings.

We cannot review the merits of the commission's ruling under the contested case standard unless and until we decide that ruling involved a contested case proceeding.

I. *Contested case evidentiary hearing issue.*

Section 17A.2(2) provides:

"Contested case" means a proceeding including but not restricted to ratemaking, price fixing, and licensing in which the legal rights, duties or privileges of a party are required by Constitution or statute to be determined by an agency after an opportunity for an evidentiary hearing.

We have said the only question which arises under this definition is whether the Constitution or a statute requires an opportunity for an evidentiary hearing. *Airhart v. Iowa Department of Social Services,* 248 N.W.2d 83, 86 (Iowa 1976).

■ A. Although Estabrook asserted on judicial review in district court he had a *statutory* right to an evidentiary hearing on the probable cause issue, we do not interpret his brief here as taking that position. In any event, we construe the Iowa Civil

Rights Act of 1965, chapter 601A, The Code 1977, as requiring a hearing only after certain conditions are met, including a finding of probable cause by the investigating official, § 601A.14(3), an attempt by commission personnel to settle the matter through conference, conciliation, and persuasion, § 601A.14(3), and a commission determination that circumstances warrant further proceedings on the complaint, § 601A.14(6). We find no statutory mandate for another evidentiary hearing prior to the issuance of a probable cause ruling.

B. We thus reach Estabrook's contention that constitutional due process requires a hearing prior to a no probable cause finding.

■ It must be kept in mind that the Iowa Civil Rights Act of 1965 was designed to correct a broad pattern of behavior rather than merely affording a procedure to settle a specific dispute. *Iron Workers Local No. 67 v. Hart,* 191 N.W.2d 758, 770 (Iowa 1971).

The legislature established the commission in 1965 "to eliminate unfair and discriminatory practices in public accommodations [and] employment." 1965 Session, 61st G.A., ch. 121 (title of act). Chapter 601A delegates to the commission the power and duty "[t]o receive, investigate, and pass upon complaints alleging unfair or discriminatory practices." § 601A.5(2), The Code 1977. It also authorizes and directs the commission in more general terms to eliminate discrimination. *See generally* § 601A.5(3)–.5(12). It lists unfair and discriminatory practices in employment, public accommodations and services, housing, and credit transactions. *See* §§ 601A.6–.9.

"Any person claiming to be aggrieved by a discriminatory or unfair practice may . . . file with the commission a . . . complaint . . . ." § 601A.14(1). The commission then makes "a prompt investigation." § 601A.14(3). If it determines "that probable cause exists for crediting the allegations of the complaint, the investigating official shall promptly endeavor to eliminate such discriminatory or unfair practice by conference, conciliation, and persuasion."

*Id.* The commission may seek a temporary injunction when it appears the complainant may suffer irreparable injury. § 601A.5(4).

When informal resolution is unsuccessful, the commission may commence formal proceedings against the respondent. § 601A.14(6). The commission may amend the complaint allegations. § 601A.14(10). It presents the case in support of the complainant through one of its own attorneys. § 601A.14(7). The complainant may be allowed to intervene and present evidence. § 601A.14(8). In that event, complainant has the burden of proof. § 601A.14(11).

If the commission finds respondent has engaged in a discriminatory or unfair practice, it issues a cease and desist order and orders whatever "affirmative action" it judges to be necessary. § 601A.14(12). In employment cases affirmative action may include hiring, reinstatement, promotion and back pay. *Id.*

The legislature apparently also enacted chapter 601A to provide a legal enforcement tool for federal civil rights legislation. The Civil Rights Act of 1964, 42 U.S.C. §§ 2000a(a), 2000e–2 (1974), proscribes discrimination in public accommodations and employment on the basis of race, color, religion, national origin, or (in employment) sex. The federal Age Discrimination in Employment Act of 1967, 29 U.S.C. § 623 (1975), proscribes discrimination in employment on the basis of age.

The employment portions of these federal laws are administered and enforced by the Equal Employment Opportunity Commission and the Department of Labor respectively. That Congress anticipated creation of state commissions to effect this federal mandate, however, is clear from examination of the legislation. Referring to the Civil Rights Act, the Supreme Court recently said:

> Congress intended through [42 U.S.C. § 2000e–5(c)] . . . to give state agencies a limited opportunity to resolve problems of employment discrimination and thereby to make unnecessary resort to federal relief by victims of the discrimination.

*Oscar Mayer & Co. v. Evans,* —— U.S. ——, ——, 99 S.Ct. 2066, 2071, 60 L.Ed.2d 609, 615 (1979) (citation omitted). The Court concluded the purpose, relevant language, and legislative history of the Civil Rights Act and Age Discrimination in Employment Act were the same, and transposed the legislative intent of section 2000e–5(c) onto 29 U.S.C. § 633(b).

"[P]rior resort to appropriate state proceedings is required under [section 633(b)], just as under [section 2000e–5(c)]." *Oscar Mayer,* —— U.S. at ——, 99 S.Ct. at 2071, 60 L.Ed.2d at 616. *See also Love v. Pullman Co.,* 404 U.S. 522, 92 S.Ct. 616, 30 L.Ed.2d 679 (1972) (prior resort to deferral states required under section 2000e–5(c)). If settlement on the local level is unsuccessful or does not occur within sixty days, then a complainant may utilize federal administrative and, ultimately, judicial remedies. In its own determination of reasonable cause, EEOC accords "substantial weight" to state findings. 42 U.S.C. § 2000e–5(b). There are no comparable provisions for crediting state findings in the Age Discrimination in Employment Act. Under both statutes, however, the civil suit brought by a still-dissatisfied complainant is a de novo trial rather than judicial review of administrative action. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 799, 93 S.Ct. 1817, 1822–23, 36 L.Ed.2d 668, 676 (1973) (Civil Rights Act); *Nabors v. United States,* 568 F.2d 657 (9th Cir. 1978) (Age Discrimination in Employment Act).

In these situations we are not dealing with "civil liberties" which are immunities—restraints on government—protected by constitutional provisions. Rather, we are involved with "civil rights" which are enforceable claims rooted in legislation. *Iron Workers,* 191 N.W.2d at 771. The requirements of procedural due process apply only to the deprivation of interests encompassed by the fourteenth amendment's protection of liberty and property. *Greenholtz v. Inmates of Nebraska Penal & Correctional Complex,* —— U.S. ——, ——, 99 S.Ct. 2100, 2103, 60 L.Ed.2d 668, 675 (1979); *Board of Regents v. Roth,* 408 U.S. 564, 569,

92 S.Ct. 2701, 2705, 33 L.Ed.2d 548, 556 (1972). When protected interests are at stake ordinarily there is a right to some kind of prior hearing. *Mathews v. Eldridge,* 424 U.S. 319, 333, 96 S.Ct. 893, 902, 47 L.Ed.2d 18, 32 (1976); *Board of Regents v. Roth,* 408 U.S. at 569–70, 92 S.Ct. at 2705, 33 L.Ed.2d at 556; *Auxier v. Woodward State Hospital-School,* 266 N.W.2d 139, 142 (Iowa), *cert. denied,* 439 U.S. 930, 99 S.Ct. 319, 58 L.Ed.2d 324 (1978). In this context "property interest" does not necessarily relate to real or chattel property, but may encompass fixed, statutory entitlements or benefits. However,

> [t]o have a property interest in a benefit, a person . . . must have more than a unilateral expectation to it. He must, instead, have a legitimate claim of entitlement to it. . . .
>
> Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.

*Roth,* 408 U.S. at 577, 92 S.Ct. at 2709, 33 L.Ed.2d at 561.

■ We may assume for the purposes of this opinion Estabrook has a property interest in the form of his right not to be discriminated against because of his age—a right foundationed by federal and state enactments. But it is plain that no commission action he now complains of deprived him of this right. If, as here, the commission terminates the proceedings on a no probable cause finding he merely has exhausted his state administrative remedy. *See City of Iowa City v. Westinghouse Learning Corp.,* 264 N.W.2d 771 (Iowa 1978); 29 U.S.C. § 633. He may then file a civil action in either state or federal court to enforce his extensive rights under the federal enactment. 29 U.S.C. § 626(c); *Jacobi v. High Point Label, Inc.,* 442 F.Supp. 518 (M.D.N.C. 1977); *see Johnson v. Butler Brothers,* 162 F.2d 87, 88 (8th Cir. 1947).

We have recognized that a duty which will foundation a justiciable claim can be created by statute if the legislature purposed or intended to protect a class of persons to which the victim belongs against a particular harm which the victim has suffered. *Wilson v. Nepstad,* 282 N.W.2d 664, 667 (Iowa 1979), and citations. More specifically, we have recognized a person subjected to discrimination may have a remedy in civil court in the form of compensatory damages. *Iowa Civil Rights Commission v. Massey-Ferguson, Inc.,* 207 N.W.2d 5, 10 (Iowa 1973); *Iron Workers,* 191 N.W.2d at 768. *See also Pompey v. General Motors Corp.,* 385 Mich. 537, 559–60, 189 N.W.2d 243, 254–55 (1971).

Clearly, Estabrook's basic right not to be discriminated against is not adjudicated by the commission's no probable cause finding. The issue thus narrows to the question whether Estabrook had such a property interest in the procedural mechanics of chapter 601A as to automatically activate a due process evidentiary hearing right.

■ We may turn to the enactment to explore the dimensions of Estabrook's alleged property right to have his claim pursued through the commission. Examining the statutory provisions, we find the legislature did not intend to require the commission to process every complaint which merely generated a minimal prima facie case. The commission's investigating official necessarily must obtain such information as to lead him to reasonably conclude a prohibited discrimination has occurred, for he or she must then "promptly endeavor to eliminate *such discriminatory or unfair practice* . . . . ." § 601A.14(3) (emphasis added). When the controversy is not settled by conference, conciliation, and persuasion, the commission proceeds further with notice and hearing "*if* the commission determines that the circumstances warrant" that action. § 601A.14(6) (emphasis added).

We are further persuaded the legislature did not intend to create a fixed right to a remedy through the commission route because its level of funding and staffing for the commission would make it impossible to

carry out such an assignment. We judicially note the commission's biennial (1977 and 1978) report. *Salsbury Laboratories v. Iowa DEQ,* 276 N.W.2d 830, 835 (Iowa 1979). In fiscal year 1978 the commission was able to process only nineteen cases through public hearing. The year-end case inventory rose from 869 in 1977 to 901 in 1978. Of 807 cases closed in fiscal year 1977, 315 (39 percent) were disposed of on a no probable cause finding. In fiscal year 1978, 675 cases were closed. Of these, 274 (41 percent) were disposed of on a no probable cause finding. We believe the legislative intent was to permit the commission to be selective in the cases singled out to process through the agency, so as to better impact unfair or discriminatory practices with highly visible and meritorious cases.

So finding, we hold chapter 601A did not create for Estabrook a "property right" to have his claim processed through the commission, nor did the no probable cause finding adjudicate his legal rights or affect his judicial remedies. It follows he was not entitled to a due process evidentiary hearing on the issue of probable cause. The commission's probable cause function is not a section 17A.12 contested case because the Constitution does not require an evidentiary hearing. This determination is supported by *Georator Corp. v. EEOC,* 592 F.2d 765, 768–69 (4th Cir. 1979); *Kelly v. EEOC,* 468 F.Supp. 417, 418 (D.Md.1979); *Stewart v. EEOC,* 17 Fair Empl.Prac.Cas. 1633 (N.D. Ill.1978); *EEOC v. Johnson Co.,* 421 F.Supp. 652, 656–57 (D.Minn.1975); *Marshall v. Fair Employment Practice Commission,* 21 Cal. App.3d 680, 685, 98 Cal.Rptr. 698, 701–02 (1971).

## II. *Substantial evidence issue.*

Our above analysis suggests a subsumed issued whether Estabrook is a person "aggrieved or adversely affected" and thus entitled to *any judicial review under section 17A.19. Id.* The posture of this appeal makes it unnecessary to reach that question. Although Estabrook, in his amended petition, referred to the commission's failure to conduct an evidentiary hearing as "unreasonable, arbitrary or capricious or characterized by an abuse of discretion," his only challenge to the merits of the commission's finding of "no probable cause" before the district court was that the finding was not supported by substantial evidence. Again on this appeal, Estabrook raises only the section 17A.19(8)(f) ground that the no probable cause finding was not supported by substantial evidence.

Section 17A.19(8)(f) expressly limits its application to contested case proceedings. We have already found this is not a contested case.

The constitutional issue Estabrook raises is only in the context of an evidentiary hearing requirement, thus seeking to meet the section 17A.2(2) definition of "contested case." Estabrook has not raised the question of what minimal process less than an evidentiary hearing would be due him in the commission investigation were he found to have a property interest in the procedural mechanics of chapter 601A. This court does not address issues, even of constitutional magnitude, not presented to the district court. *In re Staros,* 280 N.W.2d 409, 411 (Iowa 1979). We therefore affirm the district court's ruling, although on a different ground.

We add the caveat that chapter 601A, The Code 1977, was revised extensively effective January 1, 1979. 1978 Session, 67th G.A., ch. 1179. This opinion makes *no* attempt to study the effect of those changes.

AFFIRMED.

All Justices concur except UHLENHOPP and McCORMICK, JJ., who concur specially.

UHLENHOPP, Justice (concurring specially).

I. The court majority assumes for the purposes of the opinion that Estabrook "has a property interest in the form of his right not to be discriminated against because of his age . . . ." I agree. Section 601A.6 of the Code makes age discrimination against an employee an unfair employment practice. When interests are thus

"recognized and protected by state law," they are "comprehended within the meaning of either 'liberty' or 'property' as meant in the Due Process Clause." *Paul v. Davis,* 424 U.S. 693, 710–11, 96 S.Ct. 1155, 1165, 47 L.Ed.2d 405, 419 (1976).

But the majority concludes, incorrectly, in my view, that the Iowa Civil Rights Commission's finding of no probable cause on Estabrook's complaint against Goodyear did not "adjudicate" Estabrook's charge of age discrimination. After the commission's finding of no probable cause under the statute in effect at the time, the only means available to Estabrook for further pursuing his interests under the Iowa Civil Rights Act itself was judicial *review* pursuant to the Iowa Administrative Procedure Act. § 601A.15(1), The Code 1977. (*Enforcement* actions in court under the act had to be brought by the commission. § 601A.15(2).) IAPA provides that on *review* the district court may modify final agency action if it is "unreasonable, arbitrary or capricious or characterized by an abuse of discretion." § 17A.19(8)(*g*). Due to the deference which this standard of review accords agency action, the commission's finding of no probable cause on Estabrook's complaint materially reduced his chances of establishing that he was a victim of age discrimination in violation of section 601A.15. Thus in a *real* sense, the commission's finding of no probable cause "adjudicated" Estabrook's right to be free from age discrimination; the finding had an actual, substantial, adverse impact on Estabrook's complaint.

The majority offers two reasons for its conclusion that Estabrook's right to be free from age discrimination was not adjudicated by the commission's finding. First, the majority notes that Estabrook remains free to "file a civil action in either state or federal court to enforce his extensive rights under the *federal* enactment." (Emphasis added.) Second, the majority states that Estabrook has a remedy of filing a civil action in court for damages.

The availability of a *federal* cause of action to remedy age discrimination does not

appear relevant to the issue of whether the right to be free from age discrimination under the *Iowa* statute was adversely affected. Section 601A.15 of the Code creates a right which is independent of the right created by federal civil rights legislation. This is evidenced by our decision that we do not consider ourselves bound by the United States Supreme Court's construction of the federal civil rights law. *Quaker Oats Co. v. Cedar Rapids Human Rights Commission,* 268 N.W.2d 862, 866 (Iowa 1978). Because section 601A.15 creates an independent right to be free from age discrimination, remedies available under federal law cannot be said to protect the same substantive rights as those under the Iowa Act. I do not subscribe to a principle that a state may create a right but withhold due process in achieving it because a parallel federal right exists.

If a civil damage action was permissible under the statute at the time notwithstanding a finding of no probable cause, that alternative would provide a somewhat stronger basis for concluding that a right to be free from age discrimination is not adjudicated by a commission finding of no probable cause. The United States Supreme Court has held that individuals have no property right, in a constitutional sense, in any particular form of remedy. *Gibbes v. Zimmerman,* 290 U.S. 326, 332, 54 S.Ct. 140, 142, 78 L.Ed.2d 342, 347 (1933). When one form of remedy is substituted for another, however, due process requires that the substitute remedy be an effective one. *Id.*

For a number of reasons a civil action for damages is not an effective substitute for the variety of remedies provided by the Iowa Civil Rights Act. Some of the reasons are considered by Professor Bonfield in *State Civil Rights Statutes: Some Proposals,* 49 Iowa L.Rev. 1067, 1113 (1964). Private damage suits may involve protracted and costly litigation, beyond the resources of the ordinary working person, as well as the expense of engaging counsel whose fees are "unlikely to be recompensed by the relatively small amount of damages awarded, even if they are won." *Id.* The most

significant weakness of independent damage actions, however, is that they "may not operate as a deterrent to prosperous individuals who are strongly committed to a discriminatory course of conduct." *Id.* Instead of accomplishing the primary purpose of eliminating age discrimination, substituting a civil damage remedy for the administrative specific-enforcement remedies may force aggrieved individuals "to accept a substitute for a right which they are entitled to share with other members of the public." *Id. See also* Note, *The Right to Equal Treatment: Administrative Enforcement of Antidiscrimination Legislation,* 74 Harv.L.Rev. 526, 526 (1961). In contrast the commission remedy affords several administrative tools, including authority to issue enforceable cease-and-desist orders. § 601A.14(2).

Federal cases cited by the majority do not appear to support the conclusion that Estabrook's rights under the Iowa Civil Rights Act were not adjudicated by the commission's finding of no probable cause. Those cases were brought under the federal statutes. The federal statutes, unlike chapter 601A as it stood at the time, provide alternative procedures: one before the commission and the other in court after notice to the commission. 42 U.S.C. § 2000e–5(f) (civil actions for discrimination based on race, color, religion, sex, or national origin), 29 U.S.C. § 626(c) (civil actions for discrimination based on age) (1976). *Compare* §§ 601A.16(1)(*b* ), 601A.16(2), The Code 1979 (present Iowa statute). The federal alternative procedure in court involves de novo trial of the discrimination charges. The commission's finding of no probable cause is not binding. *See, e. g., Georator Corp. v. EEOC,* 592 F.2d 765, 767 (4th Cir. 1979); *EEOC v. E. I. DuPont de Nemours & Co.,* 373 F.Supp. 1321, 1338 (D.Del.1974), *aff'd,* 516 F.2d 1297 (3d Cir. 1975). Because probable cause findings under the federal act have no binding effect in the parties' alternative court cases, and the parties have de novo trials, the federal courts cited by the majority were able to hold that the plaintiffs were not deprived of liberty or property interests by commission findings. *See*

*Georator,* 592 F.2d at 768; *Stewart v. EEOC,* 17 Fair Empl.Prac.Cas. 1633, 1638 (N.D.Ill.1978); *EEOC v. Johnson Co.,* 421 F.Supp. 652, 657 (D.Minn.1975). *Cf. Kelly v. EEOC,* 468 F.Supp. 417, 418 (D.Md.1970) (did not reach the due process issue; instead denied the plaintiff any right to review under the federal administrative procedure law on the ground that probable cause determinations under the federal civil rights statute have no legal effect and hence are not "final" agency action subject to review). The same cannot be said of probable cause determinations under the Iowa Civil Rights Act, since the scope of review applied to those findings is circumscribed on administrative review, §§ 601A.15(1), 17A.19(8)(g), The Code 1977, since the commission itself is the party which must bring enforcement actions, § 601A.15(2), and since an ordinary damage lawsuit is not effective to achieve the ends of the civil rights legislation.

The state case cited by the majority does support the conclusion that Estabrook was not deprived of a liberty or property interest. In that case a California Court of Appeal dealt quite briefly with the petitioner's due process argument. After recognizing two United States Supreme Court decisions holding that due process applies to termination of welfare benefits and eviction from public housing projects, the California court reasoned thus: "In the case at bar the state has not deprived petitioner of anything. It has merely refused to act affirmatively. The availability of judicial relief in a proper case seems adequate protection against arbitrary actions by the commission." *Marshall v. Fair Employment Practice Commission,* 21 Cal.App.3d 680, 685, 98 Cal.Rptr. 698, 702 (1971).

I would not follow the reasoning in *Marshall.* Although the *Marshall* court found the petitioner was deprived of nothing, and hence could not claim the protection of due process, it went on to recognize that a petitioner who is *arbitrarily* subjected to action by the commission is entitled to judicial relief—in other words, due process. In effect, the California court concluded that

due process only applies when individual rights are arbitrarily deprived. I do not believe that to be the law. Due process applies whenever state action "remove[s] or significantly alter[s]" an individual's liberty or property interests. *Paul v. Davis,* 424 U.S. 693, 710–11, 96 S.Ct. 1155, 1165, 47 L.Ed.2d 405, 419 (1976).

II. Having concluded that due process applies to Iowa Civil Rights Commission procedure regarding probable cause, I next inquire how much protection due process demands. Strangely, before the employer can be found to have discriminated, quite elaborate *administrative* hearing proceedings must be taken, § 601A.14(5)–(13), The Code, but after a summary finding of no probable cause, the employee has *judicial* review with its deference for the administration finding. § 601A.15(1).

The relevant criteria for determining the procedural safeguards required in a given factual situation were set forth in *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18, 33 (1976) (Powell, J., concurring). The analysis requires consideration of three distinct factors: "first, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the [state] interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.*

After considering each of these factors, I do not believe that due process requires an "evidentiary hearing" before the commission makes its probable cause determination. Yet under the first factor in the *Mathews* equation, I take it no one questions that an individual's right to be free from age discrimination is an important one. *See Iron Workers Local No. 67 v. Hart,* 191 N.W.2d 758, 765 (Iowa 1971). Moreover, a significant risk of error appears to exist in the commission's procedure for determining probable cause. In the case before us, that procedure involved a

personal interview with Estabrook's employer and several telephone calls to Estabrook, but no personal interview of him or information to him regarding the employer's version of the facts. Estabrook necessarily had to proceed without knowledge of the claimed facts which Goodyear reported to the investigator and without information about the contents of the investigator's file. A person in Estabrook's position is proceeding blindly; he does not know what the employer's contentions are which he must rebut.

By requiring an evidentiary hearing in which the complainant has an opportunity to present evidence and hear and respond to opposing evidence, we would probably reduce the risk of error inherent in the commission's informal investigatory process. Such a requirement would, however, substantially reduce the speed and simplicity of the proceeding. In establishing the commission's investigatory and enforcement powers, the legislature apparently intended to create a quick and efficient means of relief for victims of unlawful discrimination. To require the commission to hold an evidentiary hearing on every complaint would severely impair its ability to achieve the legislative objective. Although I consider the due process issue to be close at this point, the state's strong interest in an expeditious means of processing discrimination complaints outweighs the possible benefits to be derived from a full-blown hearing on every complaint.

Estabrook insisted in district court and insists here that he is entitled to a full evidentiary hearing. Like the majority I conclude he is not. I do believe however that due process is implicated in probable cause determinations. Perhaps a simple disclosure by the investigator would be sufficient, in which he informs the employee and the employer of the other's version of the facts and gives them an opportunity to respond in their conversations with the investigator. *Mathews,* 424 U.S. at 348, 96 S.Ct. at 909, 47 L.Ed.2d at 41. *See also Bowman Transportation, Inc. v. Arkansas Best-Freight System Inc.,* 419 U.S. 281, 288,

95 S.Ct. 438, 443, 42 L.Ed.2d 447, 457 n. 4 (1974): *Ohio Bell Telephone Co. v. Public Utilities Commission,* 301 U.S. 292, 302, 57 S.Ct. 724, 729, 81 L.Ed. 1093, 1100 (1937). But this case does not require delineation of the steps due process mandates.

I concur in the result reached by the majority.

McCORMICK, J., joins in this special concurrence.