FERRIS ET AL., APPELLEES, *v.* PAULDING EXEMPTED VILLAGE SCHOOL DIST. BD. OF EDN., APPELLANT, ET AL.

(No. 11-81-4—Decided March 31, 1982.)

*Mr. John W. Leibold* and *Mr. Lawrence S. Huffman,* for appellees.

*Mr. J. David Webb,* prosecuting attorney, for appellant.

*Mr. William J. Brown,* attorney general, and *Ms. Karen L. Nowak,* for State Bd. of Edn. et al.

GUERNSEY, J.   In July 1971, the Auglaize-Brown Local School District, centered at Oakwood, Ohio, was merged into the Paulding Exempted Village School District, centered prior thereto at Paulding, Ohio. The merger became formalized and effective without referendum.

Prior to the merger each district had maintained respectively at Oakwood and at Paulding chartered schools including in each district grades kindergarten through twelve. After the merger grades ten through twelve were immediately terminated at Oakwood and all tenth through twelfth grade students of the

district continued their education at Paulding. In 1974 the ninth grade at Oakwood was terminated and all ninth grade students thenceforth went to Paulding. In 1980 action was commenced to terminate the eighth grade at Oakwood with all eighth grade students thereafter to attend school at Paulding.

The Ohio Educational Directory, which purports to list the chartering of all schools in Ohio by the State Board of Education, responded to these changes as they were respectively made, although at no time did that board take individual and affirmative action to revoke the charter of the individual school located at Oakwood with respect to the continuation there of grades eight through twelve.

This appeal commenced as an action initiated May 12, 1980, by disgruntled taxpayers and parents of students residing in the Paulding Exempted Village School District but also residing in territory formerly included in the Auglaize-Brown Local School District. It was brought against the Board of Education of the Paulding Exempted Village School District, the Ohio State Board of Education, the Ohio Department of Education and the Paulding County Board of Education to enjoin the completion of the action regarding the eighth grade and have the various previous actions set aside.

Based on its conclusion that the State Board of Education had chartered a junior high school at Oakwood for grades seven through nine and had never taken action pursuant to R.C. 3301.16 and R.C. Chapter 119 to revoke such charter, the trial court concluded, in effect, that the "transfer" of grades eight and nine from Oakwood to Paulding must be set aside and that such grades must be reestablished "*de facto* as well as *de jure,*" as part of a junior high school at Oakwood. The trial court denied all other relief sought by the plaintiffs.

The defendant Paulding Exempted Village School District is the sole defendant-appellant, assigning error of the trial court as follows:

"I. * * * in holding that the State Board of Education never lawfully changed the charter for the junior high school at Oakwood.

"II. * * * in holding that the charter provisions of R.C. 3301.16 override the authority of the school board and school superintendent in managing the schools and assigning pupils.

"III. * * * in holding that changing the charter of the school at Oakwood to facilitate the reassignment of grades 8 and 9 required compliance with Chapter 119 of the Revised Code.

"IV. * * * in holding that changing the charter of the school at Oakwood to facilitate the reassignment of grades 8 and 9 required compliance with Chapter 119 of the Revised Code with respect to the plaintiffs-appellees, who have no standing to assert a violation of Chapter 119.

"V. * * * in fashioning a remedy which bypassed the inquiry under Chapter 119 of the Revised Code as to whether the schools in question did in fact meet minimum standards to support a charter."

The plaintiffs cross-appealed assigning error of the trial court "in not finding June 1, 1970, as the correct Oakwood Building charter date and in failing to order grades 7 through 12 returned to Oakwood Building."

There is a strange but existing hiatus in Ohio education law as to school charters. Although at all times herein involved R.C. 3301.16 placed upon the State Board of Education the duty of classifying and chartering school districts and individual schools within each district, there is no specific statutory requirement that a school is required to have a charter to operate, that if it did not have one it could not operate, or that if it had one it would have to operate all grades included in its charter. R.C. 3301.16 prescribes, among other things, that the state board "shall

revoke the charter of any school district or school which fails to meet the standards for elementary and high schools as prescribed by the board," and that "[i]n case a school district charter is revoked pursuant to this section, the state board of education may dissolve the school district and transfer its territory to one or more adjacent districts." No provision is made as to what should happen in the event of the revocation of a charter of a school as contrasted with that of a school district, and no distinction is made as to junior high school charters, the statute dealing only with standards "for elementary and high schools."

In essence all a charter consists of is a certification by the State Board of Education that the school district and/or individual schools within the district fulfill the standards prescribed by that board of education as provided in R.C. 3301.07 (D).

The impact of plaintiffs' position is that in the event the State Board of Education has chartered a school, the school must be maintained and operated to the extent of its charter and no classes may be terminated by any local or exempted village school district board of education unless the State Board of Education has taken the action necessary to amend or terminate the individual school's charter. In our opinion this position not only has no foundation but is contrary to law when applied to the circumstances of this case.

The plaintiffs' position and the court's judgment wholly ignore the fact that the school in Paulding to which the students from the school in Oakwood were transferred was, if a charter was necessary, equivalently chartered at all times pertinent to include instruction in all the grades involved.

The broad discretion of a board of education is succinctly set forth in the syllabus of the leading case of *Brannon* v. *Board of Edn.* (1919), 99 Ohio St. 369, as follows:

"2. A court has no authority to con-trol the discretion vested in a board of education by the statutes of this state, or to substitute its judgment for the judgment of such board, upon any question it is authorized by law to determine.

"3. A court will not restrain a board of education from carrying into effect its determination of any question within its discretion, except for an abuse of discretion or for fraud or collusion on the part of such board in the exercise of its statutory authority."

R.C. 3311.29 requires each school district to "maintain within such district public schools consisting of grades kindergarten through twelve," and prescribes the dissolution of any school district "not maintaining such schools." It will be noted that the limitation is applicable to all of the schools of the district collectively and there is no requirement that each individual school shall consist of grades kindergarten through twelve. The statute does not purport to control or limit the discretion of boards of education as to determining in which school building the respective grades shall be maintained.

R.C. 3313.47 prescribes that each "exempted village * * * board of education shall have the management and control *of all the public schools of whatever name or character in its respective district.*" (Emphasis added.)

Particularly pertinent to the facts of this case, R.C. 3313.48 prescribes that the "board of education of each * * * exempted village * * * school district shall provide for the free education of the youth of school age within the district under its jurisdiction, *at such places as will be most convenient for the attendance of the largest number thereof. * * * *" In applying this statute the courts have also held that the presumption that a board of education has faithfully adhered to its requirements will control until rebutted. *Craggett* v. *Board of Edn.* (N.D. Ohio E.D. 1964), 234 F. Supp. 381. No evidence has been called to our attention in this case to

rebut the applicability of this presumption.

R.C. 3313.49 prescribes that the "board of education of each * * * exempted village * * * school district may suspend, by resolution, temporarily or permanently, any school in such district because of disadvantageous location *or any other cause* * * * [and] shall at once provide for the assignment of the pupils residing within the territory of the suspended school to such other schools as are named by said board." (Emphasis added.)

It is apparent, of course, that this statute applies to the suspending of "schools" and not "grades," but we cite the statute as an example of the breadth of specific authority and discretion which the General Assembly has bestowed upon boards of education to illustrate the breadth of the general authority and discretion belonging to such boards under the provisions of R.C. 3311.29, 3313.47 and 3313.48. See, also, *Bd. of Education* v. *Waits* (1928), 119 Ohio St. 310, 313, and *Bd. of Education* v. *State, ex rel. Brown* (1930), 37 Ohio App. 453, 457.

On the other side of the coin, R.C. 3319.01 prescribes that the superintendent of an exempted village school district shall, within certain limitations not here applicable, "assign the pupils of the schools under his supervision to the proper schools and grades * * *."

The plaintiffs also attempt to make the distinction between the assignment of pupils and the transfer of entire grades. Under the facts of this case and with particular application to "pupils," this is largely a distinction without a difference. If it were a mere assignment of pupils it was within the scope of the authority of the superintendent. On the other hand if it were a termination of entire grades with the consequent assignment of pupils, it was fully within the authority of the board of education.

Thus, we have found no restriction or limitation upon the authority of the defendant board of education to terminate the respective grades involved at the Oakwood school and transfer same, or assign all of the pupils from same, to the school located at Paulding, which having a charter therefor was presumed to meet all the minimum standards for schools having such grades, nothing appearing to the contrary.

The plaintiffs have shown no violation of law or abuse of discretion in making such transfer and have shown no clear legal right to have the grades returned to the Oakwood school.

Thus, as we arrive at this juncture, and on the peculiar facts of this case, it was not material to the judgment that should have been entered whether the Oakwood charter had been changed, whether it was properly changed under R.C. Chapter 119, whether the plaintiffs had standing under R.C. Chapter 119 to raise such issues, or whether the trial court bypassed the inquiry under Chapter 119 as to whether the schools in question did in fact meet minimum standards to support a charter. For such immateriality we find all but the second assignment of error not well-taken. For the reasons heretofore set forth we find the second assignment of error well-taken requiring reversal unless such reversal is negatived by our disposition of the assignment of error of the plaintiffs as cross-appellants.

Under their cross-assignment of error the plaintiffs claim that as of June 1, 1970, Auglaize-Brown was a currently chartered school district with its charter for "elementary K through 6 and high school 7 through 12" being established as of that date, that since there was no lawful change of an Oakwood Building charter after that date pursuant to R.C. Chapter 119, then "implementing the remedy prescribed by the trial court here," would result in all high school grades seven through twelve being returned to the Oakwood building.

Our rationale and conclusions under this assignment of error must be founded

on the same base as exists for our disposition of the defendant board of education's assignments of error. The Oakwood building charter was not material to the board of education's authority to terminate the grades there terminated with the pupils thereafter going to the Paulding school building. Additionally we find the plaintiffs to be guilty of laches as to any except grade eight, all such other "transfers" occurring prior to 1975.

*Judgment reversed.*

COLE, P.J., and MILLER, J., concur.