**IOWANS FOR TAX RELIEF and Don Carver, Appellees,**

v.

**The CAMPAIGN FINANCE DISCLOSURE COMMISSION, and Dan Johnston, Appellants.**

No. 67508.

Supreme Court of Iowa.

March 16, 1983.

Rehearing Denied April 18, 1983.

Thomas J. Miller, Atty. Gen., Julie F. Pottorff, Asst. Atty. Gen., and Thomas M. Werner, Asst. Polk County Atty., for appellants.

Tom Riley and Peter C. Riley of Tom Riley Law Firm, Cedar Rapids, for appellees.

McCORMICK, Justice.

The Campaign Finance Disclosure Commission, respondent agency, conducted a hearing pursuant to section 56.11 of the Iowa Code (1979), as a result of which it found reasonable grounds to believe petitioner Iowans for Tax Relief (IFTR) violated the campaign finance disclosure requirements of Iowa Code chapter 56. The suspected violation was "referred to the Polk County Attorney and Muscatine County Attorney for prosecution, with [the] county attorneys to determine venue of the matter." Petitioner Iowans For Tax Relief, joined by its treasurer, Don Carver, petitioned for judicial review, naming the commission and the two county attorneys as respondent parties. The district court overruled a special appearance filed by Polk County Attorney Dan Johnston and, upon judicial review, reversed the decision of the commission. Upon the appeal by Johnston and the commission, we reverse the district court.

The appeal essentially presents one procedural question and one question of substantive law. The procedural question is whether Johnston could be made a respondent for purposes of judicial review when he was not a party in the case before the agency. The substantive question is whether, as a matter of law, the disclosure requirements of chapter 56 are inapplicable to IFTR.

I. *The procedural question.* Because Johnston was named as a respondent in the petition for judicial review, the district court's jurisdiction over him depends on whether IFTR had authority to join him in the action as a respondent party.

Judicial review is available to "[a] person or party who has exhausted all adequate administrative remedies and who is aggrieved or adversely affected by any final agency action...." § 17A.19(1). The petition "shall name the agency as respondent...." § 17A.19(4). "Agency" means "each board, commission, department, officer or other administrative office or unit of the state. 'Agency' does not mean the general assembly, the courts, the governor or a political subdivision of the state or its offices and units." § 17A.2(1). The Polk County Attorney's office is an office of a political subdivision. The attorney is plainly not an "agency" within the meaning of the IAPA. *See, generally, Benson v. Fort Dodge Police Pension Board,* 312 N.W.2d 548 (Iowa 1981).

IFTR asserts that authority for joining Johnston is found in section 17A.19(5) which gives the district court power to stay agency action pending the outcome of judicial proceedings. *See Public Employment Relations Board v. Stohr,* 279 N.W.2d 286, 290–91 (Iowa 1979). This provision refers to the agency action subject to judicial review. It does not make the county attorney an agency nor does it authorize joining him as a respondent in the judicial review proceeding.

On further review of agency action, the district court sits in an appellate capacity. *See* § 17A.19(8). The proceeding does not give the court any "original authority to declare the rights of parties...." *Stohr,* 279 N.W.2d at 290.

The action against Johnston was predicated on what he allegedly was doing to implement the agency recommendation. It was based on events subsequent to the agency decision that were not part of the record before the agency. This separate action could not be piggybacked onto the petition for judicial review of the agency decision. We have no occasion to determine whether an independent action could have been brought. We simply hold that the judicial review proceeding did not give the district court jurisdiction over the action against Johnston. The district court erred in overruling his special appearance.

II. *The substantive question.* The only question on the merits of the agency decision is whether the commission erred in its legal determination that IFTR was a "political committee" subject to the reporting requirements of chapter 56. IFTR attacked the agency decision on two theories. One was based on statutory construction, and the other was based on the alleged unconstitutionality of the statute on its face and as applied to IFTR. The district court reversed the commission decision on the ground that IFTR did not come within the definition of political committee in section 56.2(6). Thus the court found the agency decision was affected by an error of law within the meaning of the judicial review provisions of section 17A.19(8)(e).

Although the district court found otherwise, we are satisfied that the evidentiary hearing provided for in section 56.11 is a contested case within the meaning of the Iowa Administrative Procedure Act. *See* § 17A.2(1); *Airhart v. Iowa Department of Social Services,* 248 N.W.2d 83, 86 (Iowa 1976). This conclusion is not affected by the fact the purpose of the hearing is not to adjudicate whether a violation has occurred but merely whether the commission "finds reasonable grounds to believe" a party has committed a violation. *See* Bonfield, *The Definition of Formal Agency Adjudication Under the Iowa Administrative Procedure Act,* 63 Iowa L.Rev. 285, 296 (1977).

A. *Statutory construction.* The reporting and disclosure requirements of chapter 56 apply only to political committees. "Political committee"

> means a committee, but not a candidate's committee, which shall consist of persons organized for the purpose of accepting contributions, making expenditures, or incurring indebtedness in the aggregate of more than one hundred dollars in any one calendar year for the purpose of supporting or opposing a candidate for public office or ballot issue.

Iowa Code § 56.2(6) (1979).

The facts found by the hearing officer are not challenged. The parties merely differ on whether those facts establish a basis for applying the statute. We will recite the facts relevant to that determination.

IFTR was organized as an Iowa non-profit corporation in 1978. Among twelve objectives relating to tax policy stated in the articles of incorporation was the objective to "amend the Iowa Constitution to limit income taxes and property taxes, and to limit total state and local government spending." In an effort to avoid the applicability of federal and state financial disclosure laws, the articles provided that the corporation would not "accept contributions, make expenditures, or incur indebtedness for the purpose of supporting or opposing a candidate for public office or a ballot issue." In subsequently soliciting funds, IFTR assured contributors that their contributions would not be disclosed.

On May 27, 1980, however, the board of directors of IFTR voted to amend the articles of incorporation to delete the prohibition against receiving and using contributions or incurring debt for supporting or opposing a ballot issue. The United States Supreme Court had ruled on first amendment grounds in *First National Bank of Boston v. Bellotti,* 435 U.S. 765, 98 S.Ct. 1407, 55 L.Ed.2d 707 (1978), that corporations could not be barred from contributing to political campaigns. The directors passed a resolution stating in part:

> We support calling an Iowa Constitutional Convention, and we recommend a "yes" vote on this question in the election on November 4, 1980, for the purpose of

proposing a Constitutional Amendment or Amendments to limit state and local government spending and taxes.

They asserted that the calling of a constitutional convention "is not a purpose or goal of Iowans for Tax Relief, and is merely a procedural step toward achieving some of [its purposes]." The articles of incorporation were amended on June 5, 1980, in accordance with the board decision.

IFTR established a ballot issue committee called "Yes For Less Taxes" to conduct a campaign for passage of the constitutional convention issue. That committee used IFTR personnel and office space and received 95 percent of its cash contributions from IFTR. Its executive committee consisted of David Stanley, incorporator, president, chief executive officer and director of IFTR, and Hilarius Heying, an IFTR board member.

The "Yes For Less Taxes" committee filed reports pursuant to chapter 56, showing $216,530 received from IFTR was used in the ballot issue campaign. IFTR, however, did not file disclosure reports and, when requested to do so, refused on the ground it was not subject to the statute.

It is obvious that IFTR used the "Yes For Less Taxes" committee as a means for supporting passage of a ballot issue in the belief it could disassociate itself from the statutory responsibility to disclose the source of funds given to the committee by IFTR for that purpose. IFTR became a political committee, however, if at that time it consisted "of persons organized for the purposes of accepting contributions, making expenditures, or incurring indebtedness in the aggregate of more than one hundred dollars in any one calendar year for the purpose of supporting ... a ... ballot issue." *See* § 56.2(6).

In arguing the statute was inapplicable, IFTR asserts (1) chapter 56 and its definition of political committee must be construed strictly against the commission, (2) the word "organized" in the political committee definition means "originally organized," (3) IFTR was not organized for ballot issue activity, (4) a commission rule shows IFTR did not become a political committee, (5) a permanent organization engaging in temporary ballot issue activity could not comply with the statute, (6) a commission explanation accompanying a proposed 1981 statutory change constitutes an admission by the commission that chapter 56 did not apply to IFTR, and (7) the 1981 amendments cannot be applied retroactively.

■■■ 1. *The rule of strict construction.* Section 56.16 provides that any person who willfully violates the provisions of chapter 56 is guilty of a serious misdemeanor. The present action is not a criminal prosecution. It merely involves an administrative determination of reasonable cause for believing a violation has occurred. This determination serves as a predicate for referring the matter to a prosecutor for possible prosecution. *See* § 56.11(3) and (4). Assuming, without deciding, that this is sufficient to make the statute penal in nature, the rule of strict construction of penal statutes is nevertheless subordinate to the rule requiring a court to give a statute a reasonable construction, having in mind "the object to be accomplished, the evils and mischief sought to be remedied, or the purpose to be subserved...." *State v. Newman,* 313 N.W.2d 484, 486 (Iowa 1981). The rule of strict construction comes into play only in doubtful cases. *Id.*

■■ 2. *Legislative intent.* Ambiguity is not introduced into the definition of political committee merely by suggesting that the word "organized" should be read as if it said "originally organized." In the light of the spirit and purpose of the disclosure requirements, it is not reasonable to believe the legislature intended to limit the time for ascertaining a duty to disclose to the time the committee was formed. If this were the meaning, any group could circumvent the statute by organizing initially for a non-covered purpose and reorganizing later for a covered purpose. The obvious overriding objective of chapter 56 in requiring disclosure of ballot issue contributors is to enable the public to consider "the source and credibility of the advocate" in evaluat-

ing the ballot issue. *See First National Bank of Boston v. Bellotti,* 435 U.S. at 792–93, 98 S.Ct. at 1424, 55 L.Ed.2d at 728. Sunshine has an antiseptic quality. *Id.* n. 32 ("Identification of the source of advertising may be required as a means of disclosure, so that the people will be able to evaluate the arguments to which they are being subjected.").

When IFTR amended its articles, resolved to support a ballot issue, established the "Yes For Less Taxes" committee as a means of implementing that objective, and undertook to receive contributions for use in supporting the ballot issue, it at that point plainly consisted "of persons organized for the purpose of accepting contributions, making expenditures, or incurring indebtedness in the aggregate of more than one hundred dollars in any one calendar year for the purpose of supporting ... a ... ballot issue." The legislature could not reasonably have intended that the applicability of chapter 56 was to be determined for all time by the committee's original purpose. Common sense and plain logic dictate that the nature of the organization at the time of the covered activity is controlling.

■ 3. *The effect of additional non-covered purposes.* IFTR contends that, even if that is true, it did not operate as a ballot issue committee or as a conduit for a ballot issue committee. In support of this contention it points out that it took stands on many other issues and received and used contributions for other purposes as well. It characterizes its ballot issue advocacy as "secondary." Section 56.2(6), however, does not make the distinction urged by IFTR. The statute does not require that the covered purpose be the committee's only purpose or even the primary purpose.

4. *The "commission rule."* The "commission rule" alleged by IFTR to excuse its noncompliance with the statute is merely an interpretative memorandum issued by the commission to provide guidance to utility companies in utility franchise elections. The issue of disclosing contributions was not involved in those guidelines because the money transferred by the utility to its franchise committee came from its revenues. Utility revenues, and their source, are of course a matter of public record. Any other contributions, under the guidelines, were to go directly to the committee and be reported by it. These guidelines do not support the construction of the statute urged by IFTR. Moreover, it does not appear IFTR ever asked the commission either formally or informally for any advice or opinion concerning applicability of the statute.

■ 5. *Possibility of compliance.* IFTR asserts that chapter 56 could not have been intended to apply to it because compliance with the filing requirements would be impossible for a permanent organization engaged temporarily in supporting a ballot issue. The commission, however, interprets the statute as requiring the statement of organization to be filed pursuant to section 56.5 within ten days of the commencement of an entity's function as a political committee. This interpretation is consistent with the definition of political committee in section 56.2(6). That definition requires both the existence of an organization able to perform the function and a purpose to carry out the function. In the present situation, the committee alleged the filing duty thus arose on or about July 24, 1980. The commission requested and gave IFTR the opportunity to make the filing on at least two subsequent occasions, but IFTR refused the request. Impossibility of compliance has not been demonstrated.

Moreover, disclosure reports are required only during the period the committee is receiving contributions and making disbursements for the covered purpose. *See* § 56.6(2). In this situation, the commission alleged only that a report due October 30, 1980, was not filed. Even when a political committee is not dissolved, a report for a period when contributions have not been received need show only the amount on hand at the beginning of the reporting period. § 56.6(4). It seems reasonable under these provisions that IFTR could terminate its status as a political committee altogeth-

er by eliminating the purpose of supporting a ballot issue. In any event, the statute is not impossible to apply to a permanent organization functioning temporarily as a political committee. Rather it seems clear the legislature intended the statute to apply to all organizations operating as political committees so long as they are doing so, whether on a permanent or temporary basis.

The difficulty asserted by IFTR is largely self-inflicted. It is reasonable to believe that a permanent organization with multiple purposes that wishes to engage on a temporary basis in a covered activity will create a temporary committee for that purpose. The temporary committee would be divorced from the permanent organization in receiving contributions, making expenditures, and incurring indebtedness. In the present case, however, IFTR sought to retain one of the attributes of a temporary committee, the function of receiving contributions for the covered purpose. The result is not affected by the fact that a portion of the contributions was used by IFTR for non-covered purposes. IFTR solicited and received contributions for the covered purpose and funneled substantial amounts from those contributions to its temporary committee. It operated as a political committee because it received funds for a covered purpose.

6. *The 1981 amendments.* IFTR contends the commission's endorsement of 1981 statutory amendments constitutes an admission that the former statute, relevant here, did not apply to IFTR. Section 56.-2(6) was amended as follows:

> 6. "Political committee" means a committee, but not a candidate's committee, which ~~shall consist of persons organized for the purpose of accepting~~ accepts contributions, ~~making~~ makes expenditures, or ~~incurring~~ incurs indebtedness in the aggregate of more than ~~one~~ two hundred fifty dollars in any one calendar year for the purpose of supporting or opposing a candidate for public office or ballot issue.

1981 Iowa Acts ch. 35, § 1. Section 56.6 was amended to add the following provision:

> A permanent organization temporarily engaging in activity which would qualify it as a political committee shall organize a political committee and shall keep the funds relating to that political activity segregated from its operating funds. The political committee shall file reports in accordance with this chapter. When the permanent organization ceases to be involved in the political activity, it shall dissolve the political committee.

1981 Iowa Acts ch. 35, § 6.

■ IFTR argues that it would not have been a political committee even under the amended definition. The commission responds, however, that a permanent organization will still be a political committee if it acts as a conduit for contributions to the political committee. We agree with the commission for the same reasons we find IFTR to be a political committee under the former definition.

As a separate, alternative argument IFTR urges that a commission explanation of the relevant portion of the amendment to section 56.2(6) shows it changed rather than clarified existing law. The alleged explanation appears for the first time in the briefs of the parties. It is not part of the record, and we refuse to consider it. We do not intimate that we would agree with IFTR's interpretation if we were to consider it. Instead, we hold that, apart from the change in dollar amount, the amendment meets the standard for clarifying amendments delineated in *Barnett v. Durant Community School District*, 249 N.W.2d 626, 629 (Iowa 1977).

7. *Retroactivity.* Finally IFTR alleges the commission is attempting to apply the 1981 amendments to it retroactively. This argument assumes that the amendments changed rather than clarified the statute. Because we reject the assumption, we find no merit in the argument.

We conclude the commission did not err in holding that IFTR was a political committee during the period of its ballot issue activity. The district court erred in reversing the commission on this ground.

B. *The constitutional issue.* The district court did not reach the IFTR's constitutional challenge to chapter 56. That challenge is based on IFTR's rights of free speech and association under the first amendment of the United States Constitution and article I, section 7, of the Iowa Constitution.

General principles governing a Federal Constitutional challenge to political campaign contribution disclosure requirements are delineated in *Buckley v. Valeo,* 424 U.S. 1, 65–69, 96 S.Ct. 612, 656–58, 46 L.Ed.2d 659, 713–16 (1976). Compelled disclosure can seriously infringe on privacy of association and belief guaranteed by the first amendment. It cannot be justified merely by showing some legitimate governmental interest. There must be a relevant correlation or substantial relation between the governmental interest and the information required to be disclosed. Members and contributors are subject to the same protections. Disclosure of contributions to candidate campaigns serves governmental interests of sufficient magnitude to survive first amendment scrutiny. First, disclosure informs the electorate of the source of a candidate's support, thereby assisting voters in evaluating the candidate. Second, it deters actual corruption and avoids the appearance of corruption by exposing large contributions to the light of publicity. Third, it provides a means of gathering data concerning other contribution limitations. *Id.*

Although the risk of candidate corruption is not involved in ballot issue campaigns, the interests of informing the electorate of the source of support or opposition to an issue and providing data for regulating campaign practices are the same. The overriding interest is to enable the public to evaluate the information and arguments of the advocates. *See First National Bank of Boston v. Bellotti,* 435 U.S. 765, 791–92, 98 S.Ct. 1407, 1424, 55 L.Ed.2d 707, 727–28 (1978). In a related context the Supreme Court has observed that disclosure assists in identifying those seeking to serve their own interests "while masquerading as proponents of the public weal." *United States v.*

*Harriss,* 347 U.S. 612, 625, 74 S.Ct. 808, 816, 98 L.Ed. 989, 1000 (1954). A relevant correlation or substantial relation between a governmental interest and the information required to be disclosed thus exists even when only a ballot issue is involved.

IFTR seeks to equate the situation of its members and contributors with the situation of the members of the NAACP in *NAACP v. Alabama,* 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958). The problem with this, however, is that the organization in that case made an uncontroverted showing that on past occasions revelation of the identity of members had resulted in various forms of reprisal. The *NAACP* case was distinguished on that ground in *Buckley v. Valeo,* 424 U.S. at 70–71, 96 S.Ct. at 658–59, 46 L.Ed.2d at 716–17. The decision in *Brown v. Socialist Workers '74 Campaign Committee,* —— U.S. ——, 103 S.Ct. 416, 74 L.Ed.2d 250 (1982) is distinguishable for the same reasons. As in *Buckley,* the record in the present case contains no evidence of harassment or any substantial basis for believing it would occur. *See ACLU of New Jersey v. New Jersey Election Law Enforcement Commission,* 509 F.Supp. 1123, 1134–35 (D.N.J.1981).

We conclude that the disclosure requirements of chapter 56 meet the applicable first amendment standard. We believe the standard is the same under article I, section 7, of the Iowa Constitution. *Cf. Des Moines Register & Tribune Co. v. Osmundson,* 248 N.W.2d 493, 498 (Iowa 1976) (same conclusion under freedom of the press guarantees). We find no merit in IFTR's constitutional challenge to chapter 56.

The commission has not challenged the standing of Don Carver to petition for judicial review. The record shows he was not a party in the contested case before the agency. *See* § 17A.19(1); *Public Employment Relations Board v. Stohr,* 279 N.W.2d 286, 291 (Iowa 1979). Because the issue has not been raised and is not material to our decision of the appeal, we do not address it.

We hold that the district court erred in reversing the commission decision.

REVERSED.

All Justices concur except CARTER, J., who concurs in part and dissents in part, and HARRIS and LARSON, JJ., and Le-GRAND, Senior Judge, who join the dissent.

CARTER, Justice (concurring in part and dissenting in part).

I agree that no issue concerning Dan Johnston or the grand jury could properly be brought before the district court on the review of agency action. I therefore concur in that portion of the majority opinion. I do not agree, however, that there is substantial evidence in the record considered as a whole to sustain a finding that IFTR was at any time a "political committee" as that term was defined in Iowa Code section 56.-2(6) (1979). I therefore dissent from the portion of the majority opinion which concludes that it was.

The latter issue is not, as the majority suggests, simply one of statutory interpretation. Also involved are troublesome questions of proof before the agency coupled with a complete lack of fact finding by the agency on essential elements of the case. The definition of "political committee" in effect during the times involved in the present case is not simply functional as the majority concludes. In using the words "organized for the purpose of" the legislature also established a motivational factor as an essential element of the definition. Accepting the majority's conclusion that those words do not mean "originally organized for the purpose of," it still is necessary to establish motive at *some* point in time.

Because it appears without dispute that IFTR was not originally organized for purposes of accepting contributions or making expenditures to support a ballot issue, it is necessary for the commission to show that at some later time this became the purpose for which the individual members of IFTR were associated together in group action. I submit that there is a complete lack of substantial evidence in the record to sustain such a finding. The record shows that prior to, during, and after the ballot issue, which is the subject of the present controversy, the members of IFTR were associated to-gether for reasons other than promoting that issue. It was a nonprofit organization which after the *Bellotti* decision had a constitutional right to expend its funds in support of a ballot issue. Whether the funds would be so expended was a corporate policy decision to be made in accordance with the established decisional processes of the organization.

The result achieved by the majority opinion equates—persons organized for the purpose of accepting contributions and making expenditures for designated political activity—with—persons organized for purposes other than accepting such contributions and expenditures but who do in fact engage in such activity incidental to the reason for their affiliation. If the proper elements are established, the statutory definition of political committee can be satisfied in regard to activity relating to expenditures or activity relating to accepting contributions. The definition does not require activity relating to both. For this reason, the practical effect of the majority's purely functional approach to the definition is to make any permanent organization, which in fact expends funds for any political activities designated in section 56.2(6), a political committee. This ignores completely that portion of the statutory definition of political committee which requires that the purpose for the organization of the individuals constituting the committee be to carry on the designated political activities.

The 1981 amendments to section 56.2(6) adopt the purely functional approach in defining "political committee" that the commission seeks to invoke in the present case. For purposes of this case, however, IFTR's obligations must be determined under the former statute which contained an entirely different definition of "political committee." In addition, the 1981 amendments adopted what is now Iowa Code section 56.6(6) (1981), which requires that a permanent organization temporarily engaging in those functions which qualify it as a political committee under the new definition, must organize a separate political committee and segregate all funds relating to

political activity from its operating funds. It is only the segregated funds which must be reported as political contributions. I submit that because no duty of segregation was imposed by the prior law, all funds of a nonprofit corporation could be considered as its operating funds unless they were specifically earmarked for one of the prescribed political purposes at the time of receipt. No funds received by IFTR during the period the commission claims it should have been reporting under the campaign disclosure act were earmarked for use in promoting the ballot issue. It appears that the decision on how to use these funds was not made until after they were received and that this was accomplished through the ordinary decisional processes of the corporation.

The commission, in deciding the case adversely to IFTR, acted almost exclusively on the premise that the "Yes For Less Taxes" committee was the alter ego of IFTR. While this may be true, it really has no impact on what the obligations of IFTR are under the campaign disclosure law. That question turns entirely on whether IFTR itself was a political committee as defined in the act. The decision of the commission does not even discuss the statutory definition of political committee or make any findings of fact which bear on the elements of the statutory definition. I would hold that if the proper elements of the statutory definition are laid beside the record made before the commission, there is a lack of substantial evidence to support a finding that IFTR was a political committee. I would affirm the portion of the trial court's decision which held that it was not.

Because the majority rejected this approach, I believe another issue is thereby presented. In addition to finding that IFTR was guilty of a violation of the campaign disclosure act, the commission also recommended criminal prosecution based on its finding that a willful violation was involved. The district court avoided dealing with the issue of whether there had been a willful violation by holding there had been no violation at all. IFTR in paragraph 12(c) of its petition for judicial review specifically challenges the commission's finding of a willful violation on the ground such finding is not supported by substantial evidence. In light of the evidence in the record that IFTR was acting in reliance on the opinion of the Attorney General (Op. Att'y Gen. 706 (1978)), which held that the reporting requirements of the act did not apply to corporations, an opinion which was not withdrawn or superseded during the period the commission claims reports were due from IFTR under the act, the majority's disposition calls for remand to the district court for separate consideration of those issues relating to whether the violation was willful.

HARRIS and LARSON, JJ., and Le-GRAND, Senior Judge, join this dissent.