**IOWA RIGHT TO LIFE COMMITTEE, INC., Plaintiff,**

v.

**Megan TOOKER, In Her Official Capacity as Iowa Ethics and Campaign Disclosure Board Executive Director; James Albert, John Walsh, Patricia Harper, Gerald Sullivan, Saima Zafar, and Carole Tillotson, In Their Official Capacities as Iowa Ethics and Campaign Disclosure Board Members, Defendants.**

No. 11–1068.

Supreme Court of Iowa.

Dec. 30, 2011.

**418**

Sean P. Moore, Brian P. Rickert, and Adam C. Gregg of Brown, Winick, Graves, Gross, Baskerville & Schoenebaum, P.L.C., Des Moines, James Bopp, Jr., Richard E. Coleson, and Kaylan L. Phillips of Bopp, Coleson & Bostrom, Terre Haute, Indiana, for plaintiff.

Thomas J. Miller, Attorney General, Jeffrey S. Thompson, Deputy Attorney General, and Meghan L. Gavin, Assistant Attorney General, Des Moines, for defendants.

MANSFIELD, Justice.

We have been asked to answer two certified questions of law in a federal case brought by Iowa Right to Life Committee, Inc. (IRTL) challenging the constitutionality of Iowa's campaign finance laws. The nub of the matter is whether a corporation must form a "political committee" under Iowa law if it wants to spend more than seven hundred fifty dollars advocating the election or defeat of Iowa candidates. Although Iowa's laws are not entirely clear (which explains the federal court's decision to certify), we conclude a corporation like IRTL may engage in express advocacy without forming a political committee.

The certified questions are as follows:

1. If a corporation that has not previously registered as a political committee makes independent expenditures aggregating over $750 in a calendar year, does that corporation become, by virtue of such expendi-tures: (1) an "independent expenditure committee," as that term is defined in Iowa Admin. Code r. 351—4.1(1)(d); (2) a "political committee," as that term is defined by Iowa Code § 68A.102(18); or both?

2. If a corporation that has not previously registered as a political committee and that "was originally organized for purposes other than engaging in election activities" makes independent expenditures aggregating over $750 in a calendar year, does that corporation become, by virtue of such expenditures, a "permanent organization" pursuant to Iowa Code § 68A.402(9)?

For the reasons discussed herein, we answer the questions as follows:

1. An independent expenditure committee.

2. No.

## I. Factual Background and Procedural History.

According to its federal court complaint, IRTL is a nonprofit, nonstock Iowa corporation and the largest pro-life organization in Iowa. IRTL is exempt from federal taxes as a social welfare organization. 26 U.S.C. § 501(c)(4) (2006). IRTL alleges that its primary purpose is to "present factual information upon which individuals may make an informed decision about the various topics of fetal development, abortion, and alternatives to abortion, euthanasia, infanticide and prevention of cruelty to children." IRTL's major purpose "is not and never will be the nomination or election of candidates."

Nonetheless, in the wake of the U.S. Supreme Court's *Citizens United* decision holding that corporations have a First Amendment right to make independent ex-

penditures expressly advocating the election or defeat of candidates,[1] IRTL seeks to make independent expenditures in Iowa to support candidates "who it believes will fight to protect issues that are important to its organization, such as protecting life."

IRTL alleges that it is unconstitutionally chilled from making such expenditures "due to the burdens imposed by [Iowa's laws and regulations] . . . and the potential civil and criminal penalties for violating the challenged provisions." Among other things, IRTL alleges that if it made these kinds of expenditures, it would become a political committee (or PAC) under Iowa law, resulting in "onerous registration, reporting, and dissolution requirements."

On September 7, 2010, IRTL filed a four-count verified complaint in the United States District Court for the Southern District of Iowa. It named as defendants the executive director and the board members of the Iowa Ethics and Campaign Disclosure Board (Board).[2] Count I—the count at issue here—challenged Iowa Code sections 68A.102(18) and 68A.402(9) (2011), alleging they unconstitutionally imposed PAC status on corporations "whose major purpose is something other than nominating or electing candidates." Other counts (II–IV) attacked various Iowa statutes and administrative rules regarding the registration, reporting, and termination requirements for independent expenditure committees; Iowa's ban on corporate contributions to candidates and committees; and a newly enacted Iowa requirement that corporations making independent campaign expenditures obtain prior board of director approval for those expenditures.

IRTL initially filed a motion for preliminary injunction, which was denied by the district court on October 20, 2010. *Iowa Right to Life Comm., Inc. v. Smithson,* 750 F.Supp.2d 1020, 1049 (S.D.Iowa 2010). Both sides then moved for summary judgment. On June 29, 2011, the district court granted summary judgment for the Board on all counts except Count I. *Iowa Right to Life Comm., Inc. v. Tooker,* 795 F.Supp.2d 852, 873 (S.D.Iowa 2011).

The district court reserved ruling on Count I because it had doubts about the proper interpretation of Iowa's election laws. *Id.* at 861–62. In particular, the court questioned the premise of IRTL's constitutional challenge, namely that IRTL would be deemed a "political committee" or PAC under sections 68A.102(18) and 68A.402(9) if it made independent campaign expenditures. *Id.* To eliminate its uncertainty about the proper interpretation of Iowa law, the district court certified the aforementioned two questions to this court. *Id.* at 862.

## II. Analysis.

**A. Pre-*Citizens United* Statutory Background.** Before we turn to the certified questions themselves, some historical background is appropriate. As this background reveals, as of January 2010, when *Citizens United* was decided, Iowa had (1) a ban on corporate expenditures in candidate elections dating back to 1975, (2) a definition of "political committee" that also went back to 1975 and had gone through several permutations, (3) a 1983 decision of this court holding that a nonprofit corporation engaged in a ballot issue campaign could be deemed a "political committee," and (4) a separate set of provisions that

---

1. *See Citizens United v. Fed. Election Comm'n,* —— U.S. ——, 130 S.Ct. 876, 175 L.Ed.2d 753 (2010).

2. The Board has the responsibility for administering Iowa's campaign finance laws. *See* Iowa Code § 68B.32A (describing the duties of the Board).

first entered the Iowa Code in 1994 and had undergone later modification allowing persons and entities to make and report "independent expenditures" in some circumstances without forming "political committees."

Our story begins in 1907. In March of that year, Iowa enacted a ban on corporate contributions to political campaigns. It provided:

It shall be unlawful for any corporation doing business within the state, or any officer, agent or representative thereof acting for such corporation, to give or contribute any money, property, labor or thing of value, directly or indirectly, to any member of any political committee, political party, or employee or representative thereof, or to any candidate for any public office or candidate for nomination to any public office or to the representative of such candidate, for campaign expenses or for any political purpose whatsoever, or to any person, partnership or corporation for the purpose of influencing or causing such person, partnership or corporation to influence any elector of the state to vote for or against any candidate for public office or for nomination for public office or to any public officer for the purpose of influencing his official action, but nothing in this act shall be construed to restrain or abridge the liberty of the press or prohibit the consideration and discussion therein of candidacies, nomination, public officers or political questions.

1907 Iowa Acts ch. 73, § 1. This statute followed by approximately two months Congress's approval of a similar ban on corporate contributions to federal campaigns—the so-called Tillman Act. *See* ch. 420, 34 Stat. 864 (January 26, 1907) (making it "unlawful for any corporation whatever to make a money contribution in connection with any election at which Presidential and Vice–Presidential electors or a Representative in Congress is to be voted for or any election by any State legislature of a United States Senator").

However, comprehensive campaign finance legislation did not come to Iowa or the federal government until the 1970s, following the Watergate scandal. Iowa's first such campaign finance law was approved in 1973 and became chapter 56 of the Iowa Code. 1973 Iowa Acts ch. 138. At that time, the 1907 legislation was still on the books in the same form in which it had been enacted sixty-six years earlier. *See* Iowa Code § 491.69 (1973). The general assembly did not address corporate contributions (or expenditures) in the new law, simply leaving the 1907 legislation as it was and where it was. "Political committee" was defined in the new campaign finance law as follows:

'Political committee' means a person, including a candidate, or committee, including a statutory political committee, which accepts contributions or makes expenditures in the aggregate of more than one hundred dollars in any one calendar year for the purpose of supporting or opposing a candidate for public office.

1973 Iowa Acts ch. 138, § 3(6).

In 1975, the general assembly revised the campaign finance law that it had enacted just two years before. 1975 Iowa Acts ch. 57. At that time, the restrictions on corporate political activity dating back to 1907 were repealed and a modified version of them was placed in the campaign finance chapter. *Id.* § 17. Hence, a new provision regarding corporate political activity was inserted into chapter 56. This provision read in part:

It shall be unlawful for any insurance company, savings and loan association,

bank, and corporation organized pursuant to the laws of this state or any other state, territory, or foreign country, whether for profit or not, or any officer, agent, representative thereof acting for such insurance company, savings and loan association, bank, or corporation, to contribute any money, property, labor, or thing of value, directly or indirectly, to any committee, or for the purpose of influencing the vote of any elector.

*Id.* § 16. The 1975 legislation also replaced the prior definition of "political committee," so it now read as follows:

'Political committee' means a committee, but not a candidate's committee, which shall consist of persons organized for the purpose of accepting contributions, making expenditures, or incurring indebtedness in the aggregate of more than one hundred dollars in any one calendar year for the purpose of supporting or opposing a candidate for public office or ballot issue.

*Id.* § 5.

The following year, 1976, the legislature relaxed the restrictions on corporate activity somewhat by allowing for a few exceptions. First, it exempted expenditures in utility franchise elections from the basic prohibition. 1976 Iowa Acts ch. 1078, § 14(1). Second, it authorized corporations to sponsor political committees, by paying their administrative expenses, so long as the actual contributions to those committees came from certain individuals. *Id.* § 14(3). Third, it permitted nonprofit corporations to make "contributions to encourage registration of voters and participation in the political process, or to publicize public issues, or both," so long as the "contributions" were not used "to endorse or oppose any candidate for public office or support or oppose ballot issues." *Id.* § 14(4).

Still, the scope of the corporate restrictions was broad. Although the basic prohibition was aimed at "contributions," the definition of "contribution" included a "transfer of money." Iowa Code § 56.2(4)(*a*) (1977). Also, a prohibited "contribution" did not have to be "to" a person or an entity, as under the 1907 legislation; it merely had to be "for the purpose of influencing the vote of any elector." *Id.* § 56.29(1). In addition, illegal "contributions" included "contributions" by nonprofit corporations "to endorse or oppose any candidate for public office." *Id.* § 56.29(4).

Thus, following the 1975 and 1976 revisions of Iowa campaign finance law, it appeared that the statutory ban on corporate campaign "contributions" included corporate campaign *expenditures* as well. The attorney general agreed with this view, issuing a formal opinion in 1977 that the Fort Dodge Chamber of Commerce could not "raise money and utilize their staff personnel to present one side of an election issue, specifically a proposal for a civic center." 1977 Op. Iowa Att'y. Gen. 307 (1978).

In 1978, however, the U.S. Supreme Court decided that corporations could not be constitutionally prohibited from spending money to influence ballot issue campaigns. *First Nat'l Bank of Boston v. Bellotti*, 435 U.S. 765, 795, 98 S.Ct. 1407, 1425, 55 L.Ed.2d 707, 730 (1978). Following the *Bellotti* decision, our attorney general reiterated his view that section 56.29 was indeed a corporate expenditure ban as well as a contribution ban and prohibits a corporation from taking a public position for or against a ballot issue, or from making a financial contribution to an organized effort to educate the public. 1978 Op. Iowa Att'y. Gen. 706 (1978). In light of *Bellotti*, though, he opined that this aspect of the statute "invades free speech territo-

ry the First Amendment has carved out as hallowed and sacrosanct from statutory infringement." *Id.* at 710.

In 1981, the general assembly responded to the *Bellotti* decision by amending section 56.29 to expressly permit corporations to spend money on ballot issues, while providing that such expenditures remained subject to the disclosure requirements of the chapter. 1981 Iowa Acts ch. 35, § 14(1). At the same time, the legislature amended the definition of "political committee" once again:

> 'Political committee' means a committee, but not a candidate's committee, which shall consist of persons organized for the purpose of accepting *accepts* contributions, making *makes* expenditures, or incurring *incurs* indebtedness in the aggregate of more than one *two* hundred *fifty* dollars in any one calendar year for the purpose of supporting or opposing a candidate for public office or ballot issue.

*Id.* § 1(6). The legislature also added the concept of a "permanent organization":

> A permanent organization temporarily engaging in activity which would qualify it as a political committee shall organize a political committee and shall keep the funds relating to that political activity segregated from its operating funds. The political committee shall file reports in accordance with this chapter. When the permanent organization ceases to be involved in the political activity, it shall dissolve the political committee.

*Id.* § 6.

In 1983, we had occasion to review and interpret the term "political committee," and found that it could include a nonprofit corporation. *Iowans for Tax Relief v. Campaign Fin. Disclosure Comm'n,* 331 N.W.2d 862, 865–67 (Iowa 1983), *appeal dismissed,* 464 U.S. 879, 104 S.Ct. 220, 78 L.Ed.2d 217 (1983). Following *Bellotti,*

Iowans for Tax Relief (IFTR) organized a campaign for a constitutional convention to limit the general assembly's taxing and spending authority. *Id.* at 864. IFTR refused, however, to file disclosure reports showing its sources of funds on the ground it was not subject to chapter 56's reporting requirements. *Id.* When the case came before us, we held that IFTR, a nonprofit corporation, met the definition of a "political committee" under both the pre–1981 and the post–1981 statutory definitions and was subject to the reporting requirements for political committees. *Id.* at 865–67. We found that an entity could be "organized" for the purpose of supporting a ballot issue within the meaning of pre–1981 law even if that was not the entity's original purpose, its only purpose, or even its primary purpose. *Id.* at 865–66. We also held the 1981 amendment to the definition of "political committee" was merely "clarifying." *Id.* at 867.

As the years passed, other adjustments were made to Iowa's campaign finance laws. One significant change occurred in 1994 when the legislature introduced the concept of "independent expenditure" reporting. Originally, this applied to any person, "other than a political committee," that made expenditures in excess of five hundred dollars in a calendar year "for purposes of supporting or opposing a ballot issue." 1994 Iowa Acts ch. 1180, § 36(2).

In 1999, the legislature made amendments to reflect the difference between so-called "express advocacy" and so-called "issue advocacy." Thus, "political committee" was redefined to include, among other things:

> A committee, but not a candidate's committee, which *that* accepts contributions in excess of five hundred dollars in the aggregate, makes expenditures in excess

of five hundred dollars in the aggregate, or incurs indebtedness in excess of five hundred dollars in the aggregate in any one calendar year ~~for the purpose of supporting or opposing~~ *to expressly advocate the nomination, election, or defeat of* a candidate for public office, or ~~for the purpose of supporting or opposing~~ *to expressly advocate the passage or defeat of* a ballot issue....

1999 Iowa Acts ch. 136, § 2. At the same time the legislature modified the ban on corporate campaign-related expenditures to limit it to those that expressly advocated the nomination, election, or defeat of a candidate:

> [It] is unlawful for an insurance company, savings and loan association, bank, credit union, or corporation organized pursuant to the laws of this state, the United States, or any other state, territory, or foreign country, whether for profit or not, or an officer, agent, or representative acting for such insurance company, savings and loan association, bank, credit union, or corporation, to contribute any money, property, labor, or thing of value, directly or indirectly, to a committee, or ~~for the purpose of influencing~~ *to expressly advocate that* the vote of an elector *be used to nominate, elect, or defeat a candidate for public office....*

*Id.* § 10(1). These provisions reflected existing U.S. Supreme Court precedent that corporations could be forbidden from spending their treasury funds to support the election or defeat of candidates, but could not be prevented from spending money to publicize their positions on issues. *See Austin v. Mich. Chamber of Commerce,* 494 U.S. 652, 654–55, 110 S.Ct. 1391, 1395, 108 L.Ed.2d 652, 661 (1990) (upholding a Michigan law that prohibited the Michigan Chamber of Commerce from making independent expenditures to support the election of a candidate); *Bellotti,* 435 U.S. at 795, 98 S.Ct. at 1425, 55 L.Ed.2d at 730.

In 2003, the general assembly modified the independent expenditure provisions, providing that "individuals" who spent more than seven hundred fifty dollars in the aggregate to advocate the election or defeat of candidates would file an independent expenditure report in lieu of complying with the more cumbersome registration requirements for political committees. 2003 Iowa Acts ch. 40, § 4(2).[3] The Board was also given authority to adopt rules for the implementation of the independent expenditure provisions. *Id.* § 7(*b*). Then, in 2005, the independent expenditure provisions were made applicable to any "person," other than a registered committee. 2005 Iowa Acts ch. 72, § 14 (codified at Iowa Code § 68A.404(2) (2007)). In 2008, the reporting threshold was lowered to one hundred dollars in the aggregate. 2008 Iowa Acts ch. 1191, §§ 116, 117 (codified at Iowa Code §§ 68A.404(1), (3)(*a*) (2009)).

Thus, at the time *Citizens United* was decided in January 2010, it was illegal in Iowa for a corporation "to expressly advocate that the vote of an elector be used to nominate, elect, or defeat a candidate for public office." Iowa Code § 68A.503(1) (2009). However, Iowa law did allow individuals and other entities such as unincorporated associations and unions to engage in these activities, and it permitted corporations to engage in express advocacy on ballot issues. Whenever the entity in question was a political committee, it became subject to certain registration, reporting, and dissolution obligations. Ac-

---

**3.** In the same legislation, the campaign finance provisions were moved from chapter 56 to chapter 68A of the Iowa Code. 2003 Iowa Acts ch. 40, § 9.

cording to the laws then in effect, a "political committee" included the following:

> A committee, but not a candidate's committee, that accepts contributions in excess of seven hundred fifty dollars in the aggregate, makes expenditures in excess of seven hundred fifty dollars in the aggregate, or incurs indebtedness in excess of seven hundred fifty dollars in the aggregate in any one calendar year to expressly advocate the nomination, election, or defeat of a candidate for public office, or to expressly advocate the passage or defeat of a ballot issue.

*Id.* § 68A.102(18)(a).

Also, as had been the law since 1981, a "permanent organization temporarily engaging in activity described in section 68A.102, subsection 18," was required to "organize a political committee" and "keep the funds relating to that political activity segregated from its operating funds." *Id.* § 68A.402(9). As set forth in the relevant statute:

> *Permanent organizations.* A permanent organization temporarily engaging in activity described in section 68A.102, subsection 18, shall organize a political committee and shall keep the funds relating to that political activity segregated from its operating funds. The political committee shall file reports on the appropriate due dates as required by this section. The reports filed under this subsection shall identify the source of the original funds used for a contribution made to a candidate or a candidate's committee. When the permanent

organization ceases to be involved in the political activity, the permanent organization shall dissolve the political committee. As used in this subsection, *"permanent organization"* means an organization that is continuing, stable, and enduring, and was originally organized for purposes other than engaging in election activities.

*Id.*[4]

Yet Iowa law recognized that some persons and noncorporate entities and persons could make independent expenditures expressly advocating the nomination, election, or defeat of one or more candidates without becoming, or being required to organize, a political committee. Thus, section 68A.404, entitled "Independent expenditures," provided in part:

> 1. As used in this section, *"independent expenditure"* means one or more expenditures in excess of one hundred dollars in the aggregate for a communication that expressly advocates the nomination, election, or defeat of a clearly identified candidate or the passage or defeat of a ballot issue that is made without the prior approval or coordination with a candidate, candidate's committee, or a ballot issue committee.
>
> 2. A person, other than a committee registered under this chapter, that makes one or more independent expenditures shall file an independent expenditure statement.
>
> a. The requirement to file an independent expenditure statement under

4. The rule that the Board adopted to implement this provision read, in relevant part:

> *Permanent organizations temporarily engaging in political activity.* The requirement to file the statement of organization applies to an entity that comes under the definition of a "political committee" (PAC) in Iowa Code Supplement section 68A.102(18) by receiving contributions, making expenditures, or incurring debts in excess of $750 in any one calendar year for the purpose of expressly advocating the election or defeat of a candidate for public office, or for the purpose of expressly advocating the passage or defeat of a ballot issue.

Iowa Admin. Code r. 351—4.1(1)(*c* ).

this section does not by itself mean that the person filing the independent expenditure statement is required to register and file reports under sections 68A.201 and 68A.402.

    *b.* This section does not apply to a candidate, candidate's committee, state statutory political committee, county statutory political committee, or a political committee.

Logically, it would appear that section 68A.404's less onerous obligation of merely filing an independent expenditure statement applied in at least one circumstance: where the person or entity had reached only the one hundred dollar threshold of section 68A.404(1) rather than the seven hundred fifty dollar threshold of section 68A.102(18). Whether it applied in other circumstances was less clear.

**B. Post-*Citizens United* Legislation.** On January 21, 2010, the U.S. Supreme Court decided *Citizens United.* *See* —— U.S. ——, 130 S.Ct. 876, 175 L.Ed.2d 753 (overruling *Austin*). That case was brought by a nonprofit corporation—Citizens United—that produced and sought to pay to air a film critical of presidential candidate Hillary Clinton. *Id.* at ——, 130 S.Ct. at 886–88, 175 L.Ed.2d at 769–70. Federal law at the time, like Iowa law, prohibited corporations from using general treasury funds to make independent expenditures that expressly advocated the election or defeat of a candidate for federal office. *See* 2 U.S.C. 441b (2006). The Court found the ban on such expenditures unconstitutional. It held that "the Government may not suppress political speech on the basis of the speaker's corporate identity." *Citizens United,* at ——, 130 S.Ct. at 913, 175 L.Ed.2d at 798–99.

In response to *Citizens United,* in March 2010, our general assembly approved S.F. 2354. It was signed by the governor on April 8, 2010, and, as emergency legislation, took effect immediately. 2010 Iowa Acts ch. 1119, § 7. This law rewrote section 68A.503 of the Iowa Code to remove the prohibition on corporate independent campaign expenditures and to expressly allow a corporation to "us[e] its funds for independent expenditures as provided in section 68A.404." *Id.* § 5(4)(*d*).

The law also rewrote section 68A.404 regarding independent expenditures. *Id.* § 3. Among other things, the one hundred dollar threshold for filing "independent expenditure statements" was raised to seven hundred fifty dollars. *Id.* § 3(1). A requirement that the independent expenditure be authorized by "the entity's board of directors, executive council, or similar organizational leadership body" was added. *Id.* § 3(2). The previous requirement that a "person, other than a committee registered under this chapter, that makes one or more independent expenditures shall file an independent expenditure statement" was continued. *Id.* § 3(3). The proviso that section 68A.404 "does not apply to ... a political committee" was also continued. *Id.* § 3(3)(*b*). And various modifications were made to the independent expenditure reporting itself. *Id.* § 3(4).

Following the adoption of S.F. 2354, the Board adopted regulations to implement it. Among other things, the regulations defined an "independent expenditure committee" as a "person" that is required to file an "independent expenditure statement." Iowa Admin. Code r. 351—4.1(1)(*d*).[5]

---

**5.** The entire subpart reads as follows:
    *Independent expenditure committee.* A person that is required to file campaign disclosure reports pursuant to 2009 Iowa Code Supplement section 68A.404(3) *"a"* as amended by 2010 Iowa Acts, Senate File

**C. The Parties' Positions.** The parties' differences center on the interplay among "political committees," "permanent organizations," and "independent expenditures" in current, post-*Citizens United* Iowa election law.

IRTL argues that if it spends over seven hundred fifty dollars to advocate for the election or defeat of candidates in Iowa, it is required by either section 68A.102(18) or 68A.402(9) (or both) to organize a political committee. *See* Iowa Code § 68A.102(18)(*a*) (providing that a political committee includes a "committee, but not a candidate's committee, that . . . makes expenditures in excess of seven hundred fifty dollars in the aggregate . . . to expressly advocate the nomination, election, or defeat of a candidate for public office, or to expressly advocate the passage or defeat of a ballot issue"); Iowa Code § 68A.402(9) (providing that a "permanent organization temporarily engaging in activity described in section 68A.102, subsection 18, shall organize a political committee and shall keep the funds relating to that political activity segregated from its operating funds").[6] In IRTL's view, this "you must form a PAC to play" requirement is unconstitutional. As pointed out by the federal district court, "IRTL's arguments regarding Count One are all premised upon IRTL's assertion that if it makes its intended independent expenditures, it 'will be defined by statute as a political committee under Iowa law.' "

IRTL contends that under the 2010 amendment to section 68A.404, it *also* becomes an "independent expenditure committee" if it spends in excess of seven hundred fifty dollars expressly advocating the nomination, election, or defeat of candidates. As IRTL puts it:

> Under Iowa's scheme, the "independent expenditure committee" definition overlaps the "political committee" definition because both have a $750 aggregation trigger (which for PACs aggregates within a year) that can be pulled by making independent expenditures, so that being an independent-expenditure committee could also trigger PAC-status (with penalties for non-compliance with PAC requirements if a group is deemed a PAC without knowing that it was).

However, IRTL does not argue in Count I of its complaint that the burdens of becoming an "independent expenditure committee" are unconstitutional. Its sole objection is to the obligations associated with being a "political committee."

The Board differs with IRTL's overall reading of current law. The Board does agree that if a corporation makes independent expenditures aggregating over seven hundred fifty dollars, it becomes an independent expenditure committee under Iowa Code section 68A.404(3). The Board

2354, section 3, due to the filing of an independent expenditure statement (Form Ind–Exp–O) shall be referred to as an "independent expenditure committee." An independent expenditure committee, or a sole individual making an independent expenditure by filing Form Ind–Exp–I, is not required to file a statement of organization. Iowa Admin. Code r. 351—4.1(1)(*d*).

**6.** IRTL's argument based on section 68A.102(18) has to deal with a certain degree of circularity in the statute. Under section 68A.102(18)(*a*), "political committee" includes a "committee, but not a candidate's committee," that spends more than seven hundred fifty dollars on express advocacy. To find out what "committee" means, we turn to section 68A.102(8), which unhelpfully explains that this term "includes a political committee and a candidate's committee." However, IRTL's argument based on section 68A.402(9) avoids this circularity, since "permanent organization" has a separate definition not tied to the definition of "political committee."

denies, however, that such an organization would qualify as a political committee under section 68A.102(18). Indeed, the Board contends the two categories are exclusive under Iowa law.

**■ D. This Court's Discretion to Answer Certified Questions.** At the outset, IRTL urges us not to answer the district court's two certified questions. IRTL argues that if we were to answer them constitutionally, we "would be forced to substantially re-write the provisions or strike them down in their entirety, and in both instances, render the provisions meaningless."

We recognize that this court has discretion in answering certified questions. Iowa Code section 684A.1 provides:

> The supreme court *may answer* questions of law certified to it by the supreme court of the United States, a court of appeals of the United States, a United States district court or the highest appellate court or the intermediate appellate court of another state, when requested by the certifying court, if there are involved in a proceeding before it questions of law of this state which may be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court there is no controlling precedent in the decisions of the appellate courts of this state.

(Emphasis added.) *See also Foley v. Argosy Gaming Co.*, 688 N.W.2d 244, 246 (Iowa 2004) (recognizing the court's discretion whether to answer certified questions).

We choose to answer the certified questions here. We do not have a situation where the answers to the questions are fact-dependent or the facts are in conflict. *See Bituminous Cas. Corp. v. Sand Livestock Sys., Inc.*, 728 N.W.2d 216, 222 (Iowa 2007) (declining to answer a question of fact); *Wright v. Brooke Group Ltd.*, 652 N.W.2d 159, 170 n. 1 (Iowa 2002) (declining to answer questions that require factual determinations); *Eley v. Pizza Hut of Am., Inc.*, 500 N.W.2d 61, 64 (Iowa 1993) (declining to answer questions where the stated facts are in conflict and could be a basis for the court to answer the questions in a variety of ways). These are pure questions of law.

Also, our answers to these questions will allow the federal district court to decide the remaining issues in a case with constitutional dimensions. The certified questions are not "purely academic or extraneous." *FDIC v. Am. Cas. Co. of Reading, Pa.*, 528 N.W.2d 605, 607 (Iowa 1995) (recognizing the court "should reject purely academic or extraneous questions").

The only ground offered by IRTL for not exercising our discretion to answer the questions assumes we will agree with IRTL's views on both constitutionality and statutory interpretation. This kind of question-begging does not advance the analysis, in our view. In the absence of a good reason *not* to answer the certified questions, we will now proceed to respond to the inquiries presented to us.

**■ E. Answering the Certified Questions.** The first certified question asks whether a corporation that makes independent expenditures aggregating over seven hundred fifty dollars in a calendar year becomes, by virtue of such expenditures, an "independent expenditure committee," a "political committee," or both. The second asks whether a corporation making independent expenditures at this level becomes a "permanent organization" that must form a "political committee." For the reasons we have already discussed, the questions are interrelated.

We agree there is some degree of conflict in the statutes. Under section

68A.402(9), which predates *Citizens United*, it appears that IRTL would qualify as a permanent organization in that it is "continuing, stable, and enduring, and . . . originally organized for purposes other than engaging in election activities." Thus, if that provision were viewed in isolation, IRTL would apparently have to "organize a political committee" as soon as it temporarily engaged in activity covered by section 68A.102(18), e.g., spending in excess of seven hundred fifty dollars to expressly advocate the nomination, election, or defeat of a candidate. *See* Iowa Code §§ 68A.102(18), 68A.402(9).

Also, twenty-eight years ago, when we were asked to interpret the predecessors to sections 68A.102(18)(*a*) and 68A.402(9), we held that Iowans for Tax Relief became subject to the "political committee" reporting requirements once it established a ballot issue committee to conduct a campaign for passage of the constitutional convention issue. *Iowans for Tax Relief*, 331 N.W.2d at 865–67.

On the other hand, under the post-*Citizens United* legislation, if IRTL spends over seven hundred fifty dollars to engage in express advocacy, it becomes an entity making independent expenditures, defined under the regulations as an "independent expenditure committee." *See* Iowa Code § 68A.404(1), (3); Iowa Admin. Code r. 351—4.1(4)(*d*). And this section of chapter 68A makes clear that it does not apply to political committees. Iowa Code § 68A.404(3)(*b*) ("This section does not apply to . . . a political committee."). In other words, according to this part of the law, "independent expenditure committee" and "political committee" are two mutually exclusive categories.

So we are faced with a situation where if we apply sections 68A.102(18) and 68A.402(9) in isolation, IRTL would be treated as a political committee or a permanent organization that has to form a political committee, whereas if we apply section 68A.404 in isolation, IRTL would become an independent expenditure committee, which precludes it from being a political committee.

■ Of course, we do not interpret statutes in isolation, especially when they are in apparent conflict. Before *Citizens United* was decided, as we have noted, it was generally illegal for corporations to spend money expressly advocating the election or defeat of Iowa candidates. *See* Iowa Code § 68A.503(1) (2009). In 2010, following the *Citizens United* decision, the general assembly lifted the ban on corporate express advocacy, by providing that corporations could engage in "independent expenditures as provided in section 68A.404." *See* 2010 Iowa Acts ch. 1119 § 5(4)(*d*). Section 68A.404, of course, is the independent expenditure provision in chapter 68A. Simultaneously, the same legislation amended section 68A.404 to require authorization by the corporate board of directors for any such independent expenditure. *See id.* § 3(2). Several other changes to section 68A.404 were made as well, but the provision that it did not apply to political committees was reenacted and continued. *Id.* § 3(3)(*b*).

Reading the 2010 legislation as a whole, the legislature's intent was to allow corporations like IRTL a pathway to engage in express advocacy under the preexisting independent expenditure provisions of section 68A.404, while also revising some other aspects of that section. There is no indication the legislature contemplated that such advocacy would fall within sections 68A.402(9) and 68A.102(18). The general assembly did not say that corporations could use their funds for independent expenditures "as provided in" section 68A.402(9), section 68A.102(18) or any of

the sections relating to political committees. It referenced section 68A.404 alone.

True, we held in 1983 in *Iowans for Tax Relief* that nonprofit corporations could become political committees even if their involvement in ballot issue advocacy was "secondary" and not their original or primary purpose. 331 N.W.2d at 865–67. But at the time we decided that case, the "independent expenditure" vehicle did not exist. The legislature did not enact the "independent expenditure" provisions until 1994. And when the legislature decided to rework its campaign finance laws in 2010 in light of *Citizens United*, it threw out the old ban on corporate express advocacy and said, explicitly, that a corporation could "us[e] its funds for independent expenditures as provided in section 68A.404." 2010 Iowa Acts ch. 1119, § 5(4)(*d*). Because S.F. 2354 only referenced section 68A.404, and because section 68A.404 by its terms cannot apply to political committees, we believe the effect of the legislation is to permit corporations like IRTL to engage in express advocacy for or against candidates without becoming political committees so long as they comply with section 68A.404.

■ " 'The polestar of statutory interpretation is to give effect to the legislative intent of a statute.' " *Rolfe State Bank v. Gunderson*, 794 N.W.2d 561, 565 (Iowa 2011) (quoting *Klinge v. Bentien*, 725 N.W.2d 13, 18 (Iowa 2006)). "In determining legislative intent, we avoid placing undue importance on isolated portions of an enactment by construing all parts of the enactment together." *Id.* We conclude the legislature made a choice in 2010 to permit corporate express advocacy in elections while having it regulated through the independent expenditure provisions of section 68A.404.

Several other points bolster this conclusion, in our view. First, where statutes are in conflict, the later-enacted provisions (here those of 2010 Iowa Acts chapter 1119) take precedence. Iowa Code § 4.8 ("If statutes enacted at the same or different sessions of the legislature are irreconcilable, the statute latest in date of enactment by the general assembly prevails."); *see also Toomey v. Surgical Servs., P.C.*, 558 N.W.2d 166, 170 (Iowa 1997) (applying this rule of construction).

Second, the definitional section of chapter 68A, *see* Iowa Code section 68A.102, which includes the definition of "political committee," *id.* section 68A.102(18), contains an escape hatch. The definitions apply "unless the context otherwise requires." *Id.* § 68A.102. This suggests that IRTL does not become (or have to form) a political committee when the context indicates a different result would be appropriate—i.e., treatment of IRTL as an "independent expenditure committee" pursuant to section 68A.404.

Third, the Board—in an advisory opinion—has said that a corporation making independent expenditures becomes an independent expenditure committee but not a political committee. *See* IECDB AO 2010–03 (April 29, 2010) (stating that a corporation that makes independent expenditures above the threshold becomes an "independent expenditure committee" but "will not be subject to the same registration and reporting requirements as a PAC"). Notably, within Iowa Code section 68A.404, the independent expenditure section of the Code, there is express authority for the Board to "adopt rules pursuant to chapter 17A for the implementation of this section." Iowa Code § 68A.404(8)(*b*). This subsection was reenacted and continued in the legislation that was adopted in the wake of *Citizens United*. *See* 2010 Iowa Acts ch. 1119, § 3(8)(*b*). We believe this grant of rulemaking authority requires us to give defer-

ence to the Board's administrative determination, in implementing section 68A.404, that corporate expenditures on express advocacy trigger an independent expenditure reporting requirement under section 68A.404 as opposed to PAC status under sections 68A.102(18) and 68A.402(9). *See generally* Iowa Code § 17A.19(10); *Renda v. Iowa Civil Rights Comm'n,* 784 N.W.2d 8, 10–14 (Iowa 2010) (discussing at length when interpretative discretion has clearly been vested in an agency).

Fourth, the prior versions of S.F. 2354 were quite restrictive, even though they too operated through section 68A.404. In theory, corporations would have been permitted to engage in express advocacy, in accordance with *Citizens United.* Yet the earlier proposals would have tightened that section in various other ways. For example, the study bill would have amended section 68A.404 to prohibit independent expenditures by any person who was a "party to a contract with the state of Iowa" or by any for-profit corporation that "receives money from the state or federal government." *See* S. Study B. 3210, 83rd G.A., 2nd Sess. § 1. Additionally, both the study bill and the first version of S.F. 2354 introduced in February 2010 would have required a corporation making an independent expenditure to disclose the names and addresses of all of its individual shareholders, including the names and addresses of individual shareholders of any parent corporation. *See id.;* S.F. 2354, 83rd G.A., 2nd Sess. § 1. Both proposals also would have left the threshold for triggering "independent expenditure" status at one hundred dollars, instead of increasing it to seven hundred fifty dollars. *See* S. Study

B. 3210, 83rd G.A., 2nd Sess. § 1; S.F. 2354, 83rd G.A., 2nd Sess. § 1. These restrictions fell out of the final version of the legislation, but the reliance on section 68A.404 as the regulatory vehicle remained. This legislative history supports our conclusion that the legislature believed that section 68A.404 was an adequate mechanism for regulating corporate express advocacy, without also resorting to the "political committee" provisions of chapter 68A.

### III. Conclusion.

Accordingly, we agree with the Board that a corporation making independent expenditures aggregating over seven hundred fifty dollars in a calendar year becomes an "independent expenditure committee" within the meaning of section 68A.404 but not a "political committee" within the meaning of section 68A.102(18) or a "permanent organization" within the meaning of section 68A.402(9).[7]

### CERTIFIED QUESTIONS ANSWERED.

All justices concur except APPEL, J., who takes no part.

---

**7.** This conclusion applies to corporations whose primary or major purpose is *not* the type of activity described in section 68A.102(18). As we have previously discussed, IRTL alleges it is such a corporation. We do not hold today that a corporation primarily engaged in campaign activities can avoid political committee status simply because it happens to be a corporation rather than an unincorporated association. We leave that decision for another day.